Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

FILED

JUN 27 2011

RICHARD W. WIEKING
NORTHERN DISTRICT OF COURT
OAKLAND CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Kabita Choudhuri, | Case No.: CV11-00518 SBA |
| Plaintiff, | First amended complaint. |
| | Demand for jury trial |
| vs., | |
| | Judge: Honorable Saundra B. Armstrong |
| WELLS FARGO BANK, N.A.; CIT GROUP, | CMC Date: July 21, 2011 |
| INC.;  FIRST AMERICAN LOAN STAR; | Courtroom 1, 4th Floor |
| DEUTSCHE BANK USA; TODD BELL | |
| AND MEG DEGROOTE | |

To the Honorable Judge, all parties and their attorneys of record:

Plaintiff submits her first amended complaint, pursuant to the order issued by the court on June 14, 2011.

**JUDICIAL NOTICE**

Judicial notice is requested that on June 16, 2011, Plaintiff submitted a request to the court to correct the following mistaken assumption by the court as stated on line 3 of page 7 of the order: "the consummation of her loan on December 22, 2004" and the ensuing statement on line 14 of page 7 of the order: "expired on December 22, 2007". If this error accrues as a result of excusable error in the original complaint on the part of the Plaintiff, she seeks to correct such error and states for the record that:

Plaintiff signed loan docs on December 22, 2005 and therefore expiry of the applicable statute of limitations for her rescission claim should be December 22, 2008. Plaintiff filed a rescission claim in the Superior Court on June 26, 2008, well within the time limits.  Plaintiff therefore reiterates her rescission claim below.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

## JURISDICTION

This court has subject matter jurisdiction on federal questions under the Truth in Lending Act (TILA) 15
U.S.C. δ1640(e);  12 U.S.C. 2601 et seq.; 28 U.S.C. δ1331 and 1367; 18 U.S.C. 1964(c).

## NATURE OF THE ACTION

This action is based on a written agreement between Defendant, Wells Fargo Bank N.A. and the Plaintiff,
Kabita Choudhuri. It asserts claims for rescission and damages under the Truth in Lending Act (15 U.S.C.
δ1601 et seq.),  and its implementing regulations, 12 C.F.R. Part 226, et seq. ("Regulation Z"); claims for
fraud and illegal business practices collectively and individually of  WELLS FARGO BANK N.A., CIT
GROUP, INC./ VERICREST;  FIRST AMERICAN LOAN STAR; DEUTSCHE BANK USA; TODD
BELL AND MEG DEGROOTE (collectively "Defendants"),  under the Real Estate Settlement Procedures
Act ("RESPA") (12 U.S.C. 2601 et seq.) , and its implementing regulations, 57 Fed. Reg. 49607
("Regulation X"); with additional claims of violation of other Federal and State statutes.

These claims all arise out of controversies ensuing from Plaintiff's December 22, 2005 signing of mortgage
loan docs originated by Defendant Wells Fargo (a "covered loan" under TILA and the California Financial
Code) at its San Francisco office and ongoing sequences of events involving the servicing and/or illegal
transfer of the loan that occurred from that date until the present date, some of which constitute different
obligations and operative facts relating to the transaction. The most recent date of controversy or fraud act
by Defendant, First American, in concert with all parties, occurred on February 12, 2011.

## CLAIM FOR RELIEF

Defendants are corporations, and licensed persons subject to the Financial Code δ 4970 et seq. organized
under federal and state law, including the Banking Law, existing and operating as finance or residential
mortgage lenders, brokers and/or loan servicers licensed under the laws of the State of California, including
the California Finance Lenders Law and/or under the California Residential Mortgage Lending Act, with
principal places of business in Los Angeles and San Francisco, California.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Defendant Wells Fargo Bank, N.A. is organized as a national banking association under the laws of the United States. Upon information and belief, its corporate headquarters are located in California.

Defendants' regular business involves extending and arranging for the extension of consumer loans, consumer credit, and offering the public their services in extending or arranging for consumer credit and loans and related services, such as trustee or mortgage servicing., each licensed under the Real Estate Law (Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code), a finance lender or broker licensed under the California Finance Lenders Law (Division 9 (commencing with Section 22000)), a residential mortgage lender licensed under the California Residential Mortgage Lending Act (Division 20 (commencing with Section 50000)), a commercial or industrial bank organized under the Banking Law (Division 1 (commencing with Section 99)).

On or about November 5, 2005, Plaintiff Kabita Choudhuri entered the Greenbrae office of Wells Fargo Bank to apply for a refinance of her existing mortgage with Washington Mutual. After submitting all the forms and supporting documents such as W2s and letters verifying employment, as requested by a mortgage banker, who pulled her credit report with a score of 695, the banker advised summarily that since Plaintiff did not qualify for a "regular" loan, but would perhaps qualify for a sub-prime loan, the banker had sent the file to Todd Bell, a mortgage broker and employee of Wells Fargo, at their San Francisco office.

During discovery in the Superior Court action, Plaintiff received documents previously undiscoverable by the Plaintiff since they were in the exclusive control of the Defendants, which demonstrated that Todd Bell worked in the sub-prime mortgage unit which specifically targeted "needy" clients to saddle them with high-cost sub-prime loans, a unit that was called the Hardy Fulfillment unit. In depositions, Todd Bell admitted that he was specifically trained to perform these functions. Plaintiff hereby directs the court's attention to **See http://www.relmanlaw.com/docs/Baltimore-Declarations.pdf : depositions of former Wells Fargo employees, Elizabeth Jacobson and Tony Paschal** [in support of Memphis v. Wells Fargo and Baltimore v. Wells Fargo, Case 1:08-cv-00062-JFM Document 176 Filed 10/21/10] which are public documents proving that its employees were regularly trained in Wells Fargo's practice of reverse redlining. Plaintiff alleges that Wells Fargo, Todd Bell, Meg DeGroote and other employees and officers of the bank conspired together to deliberately target and damage Plaintiff's credit rating in order to prey upon her as part of its

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35

reverse redlining practices. Their deliberate flouting of provisions of the Fair Housing Act by their improper and discriminatory lending practices caused Plaintiff financial and personal losses. Under 42 U.S.C. §§ 3604-05 of the FHA, Plaintiff claims injunctive relief, actual and punitive damages for injuries resulting from the pattern of illegal, irresponsible, unfair, deceptive, and discriminatory lending practices of the Defendants Wells Fargo, Todd Bell, Meg DeGroote.

At the outset, Todd Bell promised the Plaintiff a loan for $712,000 with no points or fees. He also assured the Plaintiff that he could refinance her existing home equity loan for a higher second mortgage loan from CIT Group. On November 20, 2005 he sent Plaintiff an email with the "good news" that she had qualified for the second loan with CIT for $192,000 , upon which contingency, Wells Fargo would approve its first loan for $712,000. On December 12, 2005 he sent Plaintiff another email congratulating her on the placement of both loans, assuring her that loan docs would soon be prepared, ready for signing the following week, since the first appraisal of Plaintiff's property had placed the value within the range qualifying the Plaintiff for the designated loan amounts.

At no time did Todd Bell send any written communication other than the emails to the Plaintiff.  Plaintiff never received any disclosures about changes to loan amounts or rates on Wells Fargo letterhead until after the loan docs were signed.

On or about December 20, 2011, Wells Fargo's appraiser valued Plaintiff's considerably lower than the first appraisal. On December 21, 2011, Todd Bell advised the Plaintiff that since the property had been valued lower, she would not qualify for the full amount of $712,000 but instead the amount of the first loan would be $649,000. In addition, Todd Bell claimed that, in the 3 weeks that he had been processing the loan application, Plaintiff's credit rating had [mysteriously] dropped from 695 to 564, the second loan would no longer be available.

At no time did the Plaintiff receive a written notice, as required by TILA, from CIT withdrawing its loan. Even though Plaintiff requested a copy of the credit report indicating the lower score, both Todd Bell and CIT failed to provide this to her. In fact, the CIT loan still appears on the loan docs which Defendants claim is the mortgage note [**Exhibit A: Excerpt from loan docs signed by Plaintiff; email exchange between Todd Bell & Plaintiff in which Bell discusses contact with CIT underwriter**].  Plaintiff alleges that

4        PLAINTIFF'S Stipulation for revised order
         CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Todd Bell and CIT colluded to lure the Plaintiff into thinking that with the second CIT mortgage in place, she could rely on Todd Bell's assurances about the first mortgage with Wells Fargo. Wells Fargo and CIT colluded to reduce loan funds to the Plaintiff in order to place her finances in peril and pre-dispose her to foreclosure. To her detriment, Plaintiff relied on their false assurances and agreed to sign the loan docs. At that time, Plaintiff was under the impression that Wells Fargo was a reputable financial institution.

Todd Bell assured the Plaintiff that 1) this new first loan amount was still a good one; 2) that he would have no trouble finding a second loan for the Plaintiff in the next few weeks; 3) he also assured the Plaintiff that no amount would be taken out of the cash-out from the new first loan to pay taxes that became due on December 10, 2005; 4) Todd Bell assured her that he knew the rush Plaintiff was in, since she was leaving for Europe two days later, so he assured her he would take care of all the documentation; 5) he assured her he understood that she needed the cash-out to schedule payments for her credit cards before she left on vacation; 6) he therefore assured her that loan docs would be prepared and ready for signing the next day.

Placing great reliance [to her detriment] on the assurances of Todd Bell, who clearly presented himself as a seasoned mortgage broker, working with the full knowledge and authority of the executive officers of Wells Fargo Bank to whom he reported and who supervised his work, Plaintiff agreed to sign the loan docs at 3 p.m. the next day at Wells Fargo's Fremont street office in San Francisco. [Defendants falsely stated in appellate court filings that the signing took place "after hours" to explain the absence of the title manager at the signing].

Late that night, at about 7 or 8 p.m. on December 21, 2005, Plaintiff received another phone call from Todd Bell, to advise her that because of her lower credit rating, Wells Fargo would still accommodate her request for a loan but the terms of the mortgage had changed, and points and fees would now be charged. He assured her that the charges were already included in the $649,000 note. The amounts of those charges were not disclosed to the Plaintiff until the signing. During discovery in the Superior Court action, Plaintiff was given documents which demonstrated that Todd Bell was advised as early as December 8, 2005 about these changes, but he failed to disclose these changes to the Plaintiff until after the loan docs were signed.

At **no time** did Plaintiff receive any written notice, as required under TILA, of these changes until **after** the signing had taken place.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

At **no time** did Todd Bell offer the Plaintiff the opportunity to select her own title company, as required under RESPA. Plaintiff alleges that Todd Bell intentionally prevented a title manager from presiding since, had a title manager been present at the signing, he/she would have operated independently under his/her own fiduciary duty toward the Plaintiff, with a greater likelihood of preventing the fraud that was perpetrated by the Defendants upon the Plaintiff.

On December 22, 2005, Plaintiff signed loan docs, purportedly a mortgage note for $649,000 purportedly secured by real property located in Marin County, California, that is used as plaintiff's principal dwelling and improved by a one-to-four-unit residential dwelling, making the covered loan a transaction subject to the Financial Code δ 4970 et seq. The application clearly indicated that the purpose of the loan was for debt-consolidation, not payment of taxes.

The total points and fees charged, together with the prepayment penalties added at the last minute to the contract, with no prior disclosure to the Plaintiff, as required under TILA, and together with the fact that the loan-to-debt, as well as loan-to-income ratios which were unlawfully excessive under TILA & RESPA guidelines, making the loan a predatory loan under TILA. By these actions, Defendants Wells Fargo, Todd Bell and Meg deGroote also violated δ4973(a)(2) and δ4973(f) of the California Financial Code.

A provision in a covered loan that violates Financial Code δ 4970 et seq. is unenforceable. Plaintiff may present this action to the court to request an order or injunction to reform the terms of the loan contract to conform to the provisions of the code. In addition, the court may award actual damages as well as punitive damages to the Plaintiff under the Financial Code δ 4978(b) [Civ. Code δ 3294].

Todd Bell was the only person presiding at the signing. He therefore acted as Plaintiff's title manager as well as her mortgage broker, owing her a fiduciary duty of care under each role, a duty which he breached continually, knowingly and willfully, with intent to cause Plaintiff malicious harm. Plaintiff had a trust or confidential relationship with her mortgage loan broker, Todd Bell, who had a duty by virtue of this relationship to make full disclosure of all material facts within his knowledge. By failing to disclose changes in terms of the contract as prescribed by TILA, RESPA and other statutes and regulations,

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Plaintiff alleges that Todd Bell acted with malicious intent in taking advantage of Plaintiff's pressure under time-constraints of her pending departure from the country, breaching his duty of care owed to the Plaintiff as her agent, in his dual role of mortgage broker and title manager. He refused to correct the many errors that Plaintiff pointed out in the contract, including but not limited to: incorrect date of the loan docs – December 20, 2005 instead of December 22, 2005;  presence of CIT loan for $192,000 on the loan docs as a contingency marked as "SATISFIED";  Instead, Todd Bell dismissed these discrepancies as normal business standards at Wells Fargo Bank.

Plaintiff alleges that Meg deGroote failed to fulfill her fiduciary duty under RESPA toward the Plaintiff by failing to prudently underwrite her refinance loan, which substituted an unaffordable mortgage loans for an existing mortgage with Washington Mutual that she was well suited for, that allowed her to build equity. Acting in constructive fraud together, Defendants Wells Fargo, Todd Bell and Meg deGroote conspired together to negligently misrepresent material facts relating to the loan terms, with intent to induce reliance in Plaintiff, in violation of Civ. Code δ1710(2). To her detriment, Plaintiff was induced to rely on the information provided by the Defendants since they were a reputed national bank, regularly conducting business of mortgage lending under federal and state laws. Their fraudulent acts caused the Plaintiff direct pecuniary harm and are causally connected to injury suffered by her in the loss of income and wages and the loss of enjoyment of rightfully owned property.

Plaintiff alleges that Todd Bell, as mortgage broker, colluded with underwriter, Meg DeGroote and CIT to falsify loan documents, thereby placing Plaintiff in peril at the outset of the loan period, pre-disposing her to inevitable foreclosure, since the loan was clearly intended to be contingent upon a high second loan amount, an amount/loan which was clearly stated in the loan docs as having been awarded to the Plaintiff, when in actual fact, Plaintiff never received the funds of $192,000 from CIT.

The loan closed on December 28th 2005, but Todd Bell broke his promise and ordered payment of taxes that were not yet overdue, from the cash-out promised to the Plaintiff, reducing the total cash-out amount to $2,000 from $8,000. There was no disclosure as to this material change in fact to the Plaintiff as required under TILA, therefore Plaintiff could not stop the closing of the loan.

The notice of cancellation of which Todd Bell gave the Plaintiff only **one copy** [not 2 copies as required

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

by TILA], contained the incorrect cancellation date of December 23, 2005 [since the loan docs were incorrectly dated December 20, 2005].

Plaintiff was in transit to Spain from December 23 until December 25, but had she known that the correct date to cancel was December 27th, she could still have cancelled the "contract" on December 27th had she know that Todd Bell would not keep his promises. Instead, the loan closed on December 28th without disclosure to the Plaintiff of a material change of fact, i.e., the lower cash-out amount.

As a result of this fraud, many of Plaintiff's scheduled payments bounced, since she did not have time to place stop-payments on them. This led to a spiral of debt escalation from penalties and fee increases .

Plaintiff attempted to rescind the contract by phone, email and letters to Wells Fargo customer service, many times between December 28th 2005 and June 2008, but Wells Fargo refused to consider her requests for rescission or loan modification. Instead, the Defendant led the Plaintiff into a fraudulently devised foreclosure in August 2007, under the pretext of processing a loan modification. This is identical behavior that Defendant Wells Fargo has inflicted upon its customers, [as in e.g., Case 3:10-cv-05874-WHA in this court]. It ignored mediation and modification requests made by Marin Mediation as well as the District Attorney's office in Marin, on the Plaintiff's behalf.

Plaintiff timely filed a rescission claim in the Marin Superior Court on June 26, 2008.

On or about July 15, 2008, Wells Fargo dumped $45,000 "for current and future taxes" into Plaintiff's escrow amount in order to show the Superior Court that she could not afford the higher monthly payments. It also attempted to place $2500 for insurance premiums into escrow, however it withdrew that amount when Plaintiff filed a FTC complaint.

On or about August 25, 2008, Wells Fargo illegally transferred title to Deutsche Bank. In violation of TILA provisions for disclosure, neither Wells Fargo nor Deutsche Bank advised the Plaintiff of the transfer. Plaintiff inadvertently discovered this transfer at the property tax office of the Marin County Civic Center, while browsing for her deed of trust.

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Working in full agreement, and with full knowledge and intent to harm Plaintiff, at the same time, First American, as Trustee for Deutsche Bank and Wells Fargo, began to send Plaintiff multiple notices of default to her home, sometimes 20 identical notices in a single day. This activity was merely intended to harass the Plaintiff, not to benefit her in any way. Plaintiff's home was listed in various foreclosure reports and journals and e-newsletters, such that Plaintiff was inundated with mail and email offers to help "resolve" foreclosure issues. Plaintiff was harmed with the undue stress, worry and fear of losing her home caused by these fraudulent acts of the Defendants.

In August 2009, First American even posted a notice of default on her gate, violating an injunction issued by the Superior Court against all foreclosure action by Wells Fargo, its employees and/or agents. Plaintiff alleges that Defendants maliciously and intentionally caused interference with Plaintiff's enjoyment of rightfully owned property and seeks to quiet title to her property.

This act of fraud in violation of a court order, resulted in the removal of Plaintiff's daughter to Los Angeles by her father. Plaintiff's daughter spent a year of anguish and loneliness without her childhood friends from Marin. Usually a highly gregarious child, she withdrew and made only two friends that year, one of whom ran away from home and the other returned to her home country of England, leaving her utterly friendless by the end of that year.

Plaintiff, left alone in Marin, suffered extreme stress and emotional distress and post-traumatic stress syndrome, cringing every time she spotted Wells Fargo logo and the hijacked carriage symbol or even at the mention of Defendants' name.

Plaintiff also lost her job at Yahoo! Inc. because of her required absences from work to attend court for hearings/filings/research, since she was appearing pro se. To this date, Plaintiff is unable to feel committed to a full time job in the fear of losing that job as a result of the time demands from this action.

Most recently, First American again began to send notices of default to the Plaintiff on February 15, 2011, despite the fact that Plaintiff has been regularly making the monthly mortgage payments to the Superior Court and despite the fact that the appellate court has summarily granted Plaintiff an injunction against Defendants' foreclosure or debt-collection activities until the appeal is resolved. This fraudulent action by

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

First American on behalf of Deutsche Bank and Wells Fargo, with their full knowledge and consent, resulted in harming the Plaintiff's reputation, as she began receiving many letters and offers to resolve the foreclosure action [**Exhibit B - foreclosure resolution offer dated naming Deutsche Bank as trustee**].

Wells Fargo, CIT, Deutsche Bank and First American did agree together and aided and abetted each other in their fraud actions, in acts which form an ongoing pattern of deceit and fraud, violating RICO, resulting in damage to the Plaintiff, in an amount to be determined at trial.

Each Defendant willfully and knowingly acted, with full knowledge of the others' actions and intent to defraud and deceit, and they collectively conspired to violate the provisions of 18 U.S.C. 1962 ("RICO"). Plaintiff is therefore entitled to civil remedies under 18 U.S.C. 1964 to recover "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"

During the discovery process of the action in Superior Court, Plaintiff discovered documents from Wells Fargo's underwriting files that were previously unavailable to the Plaintiff. There was no way that the Plaintiff could have uncovered these documents earlier, since they form part of the internal files of the bank's underwriting department, documents that are not shared with other departments of the bank and certainly not with its clients.

These documents include evidence that Defendants falsified TILA anti-predatory worksheets, by indicating zeros in the columns for "originating fees" and "discount points". Defendants inflated Plaintiff's income 300% without her knowledge or consent, despite the fact that Plaintiff had properly provided W2s and other income verification documents, thereby qualifying her for a loan that was actually beyond her means. There were many documents that had been forged with Plaintiff's signature. By their collusion, Defendants defrauded and set Plaintiff up for failure and foreclosure from the outset of the loan.

Had there been full and accurate disclosure as prescribed by law at the various stages of the loan processing, Plaintiff would not have agreed to sign the loan docs, giving up a good loan with Washington Mutual to enter a fraudulently devised loan fraught with risks at the very outset of the loan period. Defendants Wells Fargo, CIT, Todd Bell and Meg DeGroote were well aware of this and therefore, acting together, willfully, maliciously and intentionally chose to violate TILA, RESPA and RICO and chose to

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

withhold these disclosures from the Plaintiff. In subsequent events, Defendants Deutsche Bank and First American similarly conspired with the other Defendants to mislead the Plaintiff by failing to disclose transfer of title and other disclosures from the Plaintiff.

Plaintiff alleges that had any one of the Defendants refused to participate in the fraud conspiracy, Plaintiff would not have been placed at risk in a high-cost predatory loan. Defendants violated RICO with these conspiratorial actions.

## STATUTE OF LIMITATIONS

Since plaintiff states a cause of action for fraud, the period of limitation expires at the end of three years after the time when the action accrued, which is the time when the aggrieved party **discovered facts** constituting fraud, as provided by Code Civ. Proc. δ338(d). Prior to access to Defendants' files in the discovery procedure in the Superior Court action, Plaintiff lacked the knowledge as well as the means of obtaining such knowledge, since in the exercise of reasonable diligence the facts could not have been discovered at an earlier date. The documents providing Plaintiff with the facts to support her fraud claim were not available in public records or corporate books readily available to the Plaintiff.

Plaintiff alleges fraud based on information and belief about specific acts or omissions of individual defendants who had different obligations, and on different operative facts in the chain of events which followed the December 22, 2005 signing of the written agreement between Defendant Wells Fargo and Plaintiff. Plaintiff also alleges fraud in group conduct involving certain defendants acting in concert or pursuant to a conspiracy.

Since many facts still lie within the exclusive control of the Defendants, Plaintiff requests the court to grant discovery so that Plaintiff may plead with greater plausibility and particularity to fulfill the particularity requirement of Rule 9(b).

Action for damages for conspiracy to defraud is governed by three year statute of limitations applicable to cause of action for fraud, Code Civ. Proc. δ338(d). [Livett v. F.C. Fin. Assocs. (1981) 124 Cal.App. 3d 413, 418; Agnew v. Parks (1959) 172 Cal.App. 2d 756, 766, 343 P.2d 118].

11

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Action for damages for conspiracy to defraud is governed by Code Civ. Proc. δ338(d); delayed discovery rule of that section is applicable even if last overt act was committed more than three years before filing of action. [Aaroe v. First Am. Title Ins. Co. (1990) 222 Cal.Ap. 3d 124, 128-129].

Cause of action based on civil conspiracy accrues on date of commission of last overt act in pursuance of conspiracy. [Wyatt v. Union Mortgage Co. (1979) 24 Cal. 3d 773, 786; Livett v. F.C. Fin. Assocs. (1981) 124 Cal.App. 3d 413, 418; Kenworthy v. Brown (1967) 248 Ca. App. 2d 298, 301; Schessler v. Keck (1954) 125 Cal.App. 2d 827, 832-833].

## FIRST CLAIM FOR VIOLATION OF TRUTH IN LENDING ACT
### 15 U.S.C. δ1601 et seq.
### (Against all Defendants in various obligations and operative facts)

Plaintiff incorporates her each and every allegation set forth above.

The mortgage loan transaction at issue is a covered loan subject to the provisions of TILA. TILA grants consumers a three-day right to cancel residential mortgage loan contracts. Pursuant to 15 δ1635(a), the three-day cancellation begins, among other provisions, on "delivery of accurate material disclosures. These material disclosures include accurate cancellation date, any and all changes in terms of the contract such as annual percentage rate, all finance charges and the amount financed. 15 U.S.C. δ1602(u).

If an accurate notice of cancellation is not provided, it is deemed that "material disclosures" have not been made, then the right to cancel extends to three years after the date of the loan, OR if the facts of the transaction were hidden from the consumer, three years from the date consumer discovered the hidden facts. 15 U.S.C. δ1635(f).

When a consumer rescinds a contract, the security interest giving rise to the right of rescission becomes void, and the consumer is not liable for any amount, including any finance charge or other charge. 15

12     PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

U.S.C. δ1635(b).

Within 20 days after the receipt of a consumer's election to cancel the contract, the creditor must return to the consumer all money or property given, including all interest and finance charges paid, and shall take all action necessary to reflect the termination of any security interest created under the transaction. 15 U.S.C. δ1635(b0; 15 C.F.R, δ226.23(d).

Defendant Wells Fargo and Todd Bell failed to provide the Plaintiff with the correct cancellation date, failed to provide two copies of the notice to cancel, failed to disclose material facts such as annual percentage rate and finance charge details affecting the terms of the contract until after the signing of the contract; failed to provide in writing clearly and conspicuously in a timely fashion; Defendants CIT Group and Wells Fargo failed to provide material disclosures regarding the second mortgage loan; Defendants Deutsche Bank, First American and Wells Fargo Bank failed to provide disclosure relating to the transfer of title - all fraudulent actions in violation of the provisions of TILA.

Records from the transaction files of Defendant Wells Fargo indicate that it extended a loan to Plaintiff without regard to her ability to pay, since Wells Fargo underwriting department and Defendant Meg DeGroote had falsified Plaintiff's income to fraudulently qualify her for a high-risk loan. Plaintiff is informed and believes and thereon alleges that Defendant Wells Fargo Bank N.A. engaged in a pattern and practice of extending credit to consumers, Plaintiff included, under high risk mortgages without regard to consumers' ability to pay.

Because of these violations, Plaintiff has continuing right to rescind the loan transaction for up to three years after the consummation of the loan, pursuant to 15 U.S.C. δ1635(a) and (f) and 15 C.F.R. δ226.23(b)(5).

On June 26, 2008, well within the three year limitation for the filing of a claim under TILA, Plaintiff did file in Superior Court, a rescission claim, thereby performing due diligence in observing the statute of limitation and hereby reiterates her rescission claim.

Because of these violations, Defendant Wells Fargo is liable to the Plaintiff in an amount twice the finance

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

charge, actual damages to be determined at trial, and costs under 15 U.S.C. δ1640(a). Plaintiff is also entitled to rescission of the loan transaction and hereby demands rescission; an order requiring the Defendant Wells Fargo and all its assignees to take any and all necessary steps to terminate any security interest in Plaintiff's property and a declaration by the court that the security interest is void; impingement of any and all foreclosure instruments, and all derogatory information reported to any an all credit reporting agencies or bureau; return to the Plaintiff all money given by the Plaintiff to any of the Defendants in connection with the loan and foreclosure actions to date; statutory damages, costs and such other relief as the court may deem just and proper.

As a result of Defendants misconduct, Plaintiff has suffered and continues to suffer pecuniary and non-pecuniary damages in an amount to be determined at trial, which she is entitled to recover.

Moreover, Defendants' misconduct was willful, malicious and outrageous, in conscious disregard of Plaintiff's rights and therefore punitive damages are warranted and demanded.

As a result of Defendants' misconduct, Plaintiff is entitled to declaratory and injunctive relief preventing Defendants from taking any action to collect on the loan, and/or upon the Property, and/or to transfer of property.

## SECOND CLAIM FOR COMMON LAW FRAUD
### (Against all Defendants)

Plaintiff incorporates her each and every allegation set forth above.

On or about November 5, 2005, Wells Fargo employee, Todd Bell with the full knowledge of his managers and executive officers of the bank, promised the Plaintiff a low-cost, affordable refinance of her existing loan with Washington Mutual. He promised a loan for $712,000 which would incur no finance charges or points and fees. Document later showed that, even though he found out as early as December 20, 2005 that the loan amount and its terms had changed, he failed to disclose these material facts to the Plaintiff as required by TILA until the signing of the contract. Documents which had previously been exclusively in the control of the Defendants showed that Todd Bell had be trained to specifically target "needy" clients, so that toxic waste loans could be originated and dumped on unsuspecting clients, to prey specifically on the

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

elderly, ethnic minorities, and other easily identifiable demographics perceived as low-hanging fruit, including the Plaintiff.

These fraudulent business practices of Wells Fargo were the focus of an April 1, 2011 60-minutes report "Mortgage paperwork mess: Next housing shock?" featuring lawyer and fraud investigator with a specialty in forged documents, Lynn Szymoniak, who had trained FBI-agents. [http://www.cbsnews.com/stories/2011/04/01/60minutes/main20049646.shtml]

Plaintiff was similarly bait-and-switched with a toxic negative amortization loan with an interest rate cap of 12%, higher than that promised by Todd Bell. Monthly payments were devised to be $3900, almost double what she was paying previously, the cash-out which was the purpose other refinance, was reduced by more than $6,000; the loan amount was drastically reduced without timely disclosure, points and fees were added without timely disclosure; CIT withdrew its second loan without disclosure to the Plaintiff; Wells Fargo did not remove the contingency for the second loan from its loan docs, but instead left it on the note to falsely show that that contingency had been satisfied, to falsely reduce Plaintiff's monthly debt obligations on paper only. These material facts were intentionally hidden from the Plaintiff to induce her to place great reliance on the information falsely provided to the Plaintiff.

In depositions of Todd Bell during the discovery period in the Superior Court action, Todd Bell admitted his recklessness, in that he put aside all of his professional training and fair business practice guidelines to comply with Plaintiff's haste in placing the loan, since she was under time-constraints of her pending out-of-country trip and wanted to schedule credit card payments online before her departure. The unseemly haste resulted in disaster for the Plaintiff, since Todd Bell acted illegally in entrapping the Plaintiff in a toxic loan. Todd Bell saw the perfect opportunity to pick "low hanging fruit" as he was well trained to do by his employer, Wells Fargo in their unlawful acts of proliferating toxic loans.

Todd Bell's actions constituted reckless behavior since it constituted unreasonable conduct hat is "an extreme departure from the standards of ordinary care and that presents a danger of misleading buyers or sellers which is either known to the Defendant or is so obvious that the Defendant must have been aware of it" [Nathenson v. Zonagen Inc. 267 F3d at 408; Helwig v. Vencor Inc., 251 F3d at 550; Bryant v. Avado Brands, Inc. 187 F3d at 1284].

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

Plaintiff, to her detriment, relied on the false assurances of Todd Bell. Had she known the true material facts of the loan amount and terms in a timely fashion, she would not have signed the loan docs. Knowing this, Todd Bell deliberately violated TILA disclosure requirements and induced Plaintiff to sign loan docs, thereby exposing her to immediate risk of foreclosure, into which, it later transpired that all Defendants were conspiring and are continuing to conspire to this day, to lead the Plaintiff.

Plaintiff was harmed and continues to be harmed by the unconscionable loan terms which are materially different than those promised to her by Todd Bell.

The most recent overt act of fraud occurred as recently as February 15, 2011 - see **Exhibit C: foreclosure notice of sale from First American** on behalf of Deutsche Bank and Wells Fargo Bank, N.A.

Plaintiff is entitled to rescission of the fraudulently devised loan and demands such rescission. Plaintiff is also entitled to punitive damages and for compensation for emotional distress suffered as a result of the actions alleged above, and costs of the suit.

### THIRD CLAIM FOR VIOLATION OF CAL. BUS. & PROF. CODE δ17200 et seq.
### (Against all Defendants)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

Plaintiff alleges that the unlawful acts and practices of the Defendants alleged above constitute unfair business practices and business acts with the meaning of Cal. Bus. & Prof. Code δ17200 et seq.

Plaintiff alleges that by 1) allowing transfer of title to Deutsche Bank and 2) allowing First American to record a notice of sale and notice of default when it did not have the authority to do so, Defendants committed one or more violation of the provisions of Cal. Bus. & Prof. Code δ17200 et seq.

Furthermore, Plaintiff alleges that their actions violated numerous laws and regulations including Civ. Code

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

δ§2924 and 2934(a)(2)(D), and  are therefore per se violations of Cal. Bus. & Prof. Code δ17200 et seq.

Defendants' misconduct gave them an unfair competitive advantage over their competitor who do not violate these laws. Specifically, Wells Fargo was able to profit illegally from the illegal transfer or sale of the note to Deutsche Bank. Deutsche Bank gained by illegally acquiring title and profited by unfair competition by not observing the law.  First American profited illegally in similar fashion and by not complying with foreclosure laws and disclosure requirements.

First American deliberately ignored court injunctions, first the Superior Court's preliminary injunction with its August 2010 notice of sale and it again ignored the appellate court's injunction of April 4, 2011 by announcing and posting the July 1, 2011 notice of sale, gaining unfair profit margin and other advantage over its competitors who do observe such injunctions.

If Wells Fargo illegally retained the second mortgage as a contingency that had been satisfied on its mortgage note for the Plaintiff, it is reasonable to expect that CIT also retains that amount on its books as an outstanding debt, possibly illegally assumed by an individual that may have stolen Plaintiff's identity. That information lies exclusively under the control of Defendant CIT and therefore the court should permit the Plaintiff the opportunity of discovery to state her claim with greater particularity.

Plaintiff alleges that the public are threatened by these continuing unfair business practices and illegal acts of the Defendants. Plaintiffs and other similarly situated borrowers have no other remedy at law that  will prevent Defendants' misconduct from occurring and/or recurring in the future.

Plaintiff alleges that as a direct and proximate result of Defendants' unlawful conduct, she has suffered injury in fact and has lost money as a result of Defendants' unfair competition. Plaintiff alleges that she may suffer further loss if the court does not prevent their unlawful conduct.

Plaintiff is entitled to equitable relief, including restitution, disgorgement of all profits accruing to the Defendants because of their unlawful and deceptive acts and practices and costs and declaratory and injunctive relief.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

## FOURTH CLAIM FOR VIOLATION OF 18 U.S.C. 1962 ("RICO")
### (Against all Defendants)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

Defendants Wells Fargo and its employees, CIT, Deutsche Bank and First American did agree together and aided and abetted each other in their fraud actions, in acts which form an ongoing pattern of deceit and fraud, violating RICO, resulting in damage to the Plaintiff, in an amount to be determined at trial.

Wells Fargo's reverse redlining business practices, in particular portrays a pattern of deceit which it regularly practices to prey on the elderly and other easily identifiable demographic groups of people such as ethnic minorities, including the Plaintiff, as evidenced by the actions pending against Wells Fargo in all 50 states by their Attorneys General.

Most recently, First American began to send notices of default to the Plaintiff on February 15, 2011, despite the fact that Plaintiff has been regularly making the monthly mortgage payments to the Superior Court and despite the fact that the appellate court has summarily granted Plaintiff an injunction against Defendants' foreclosure or debt-collection activities until the appeal is resolved. This fraudulent action by First American on behalf of Deutsche Bank and Wells Fargo, with their full knowledge and consent, resulted in harming the Plaintiff's reputation, as she began receiving many letters and offers to resolve the foreclosure action [See **Exhibit D** - *Further details of TILA contravention by* *We Defendants*]

Each Defendant willfully and knowingly acted, with full knowledge of the others' actions and intent to defraud and deceit, and they collectively conspired to violate the provisions of 18 U.S.C. 1962 ("RICO"). Plaintiff is therefore entitled to civil remedies under 18 U.S.C. 1964 to recover "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35

### FIFTH CLAIM FOR VIOLATION OF 12 U.S.C. δ2601 et seq. ("RESPA"), AND ITS

### IMPLEMENTING REGULATIONS, 57 Fed. Reg. δ49607 ("Regulation X")

### (Against Defendants Wells Fargo Bank N.A., Deutsche Bank and First American)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

The loan transaction at issue is a mortgage loan covered by RESPA. A violation of RESPA is also unlawful under Financial Code δ 50505, which states that "any person who violates any provision of RESPA or any regulation promulgated there under, violates this division [California Residential Mortgage Lending Act]".

At any given time, it was not clear which of these Defendants was actually the servicer of the loan. However, due to the conspiratorial nature of the misdeeds alleged herein and to the Defendants failure to properly advise Plaintiff as to the roles and identities of the various entities purported handling her loan at any given time, these allegations are made to all these Defendants.

Defendants violated RESPA by failing to correctly and accurately comply with its disclosure requirements. In their refusal to stop harassing the Plaintiff with notices of default and to provide accurate accountings of Plaintiff's payments as requested by her, the Plaintiff alleges on information and belief and thereon alleges that Defendants engaged in a pattern or practice of non-compliance with the mortgage servicer provisions of 12 U.S.C. § 2605.

Plaintiff alleges on information and belief based on records from the Marin County Tax department that Defendants Wells Fargo Bank N.A. and Deutsche Bank conspired to defraud the Plaintiff when they illegally transferred title to her property to Deutsche Bank while a fraud claim was under way and without the required disclosure under 12 U.S.C. § 2605 and when they illegally added ~$45,000 to her escrow account in violation of 12 U.S.C. § 2609.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered and continues to suffer pecuniary and non-pecuniary damages and is entitled to recover statutory damages and actual damages in an amount to be determined at trial, costs and reasonable attorney fees.

### SIXTH CLAIM FOR VIOLATION OF Title 1.6C (δ1788 ET SEQ.), ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

#### (Against Defendant Wells Fargo Bank, Deutsche Bank and First American)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

Plaintiff alleges that the Defendants are debt collectors within the meaning of the Rosenthal Fair Debt Collection Practices Act ("FDCPA") since in the ordinary course of their business, they regularly, on behalf of themselves or others, engage in debt collection, First American directly so and Wells Fargo through its mortgage servicing division, Wells Fargo Home Mortgage, Inc.

Plaintiff alleges that Defendants' actions constitute a violation of the FDCPA, in that they threatened and continue to threaten despite court injunctions, to take actions not permitted by law, including but not limited to collecting on a debt not owed to the Defendants, making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note which is not in their possession and upon a false Deed of Trust, falsely stating the amount of debt, if any, inflating that amount by charges not permitted by law, and using unconscionable and unfair means to collect a debt they have failed to verify.

Defendants failed to supply Plaintiff with the information required by 15 U.S.C. δ1692(g).

In addition to the misconduct in the loan origination described in the claims above, Defendants have also violated Civ. Code δ2920 et seq. by engaging in unfair or deceptive practices in servicing the loan, including but not limited to: 1) fraudulently leading the Plaintiff into foreclosure while misleading her that a loan modification was in process; 2) failing to accurately credit payments to Plaintiff's mortgage account; 3) charging exorbitant reinstatement and administrative fees to inflate monthly payment amounts; 4) despite requests from the Plaintiff to communicate only in writing, repeatedly and outside the hours prescribed by

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

the PDCPA, telephoned the Plaintiff to harass the Plaintiff with threatening language, even going so far as to threaten and abuse Plaintiff's sister when she answered the phone at 5 a.m. while she was babysitting for the Plaintiff.

Ignoring Plaintiff's requests for an accurate accounting, accurate application of plaintiff's payments to her mortgage account and removal and refund of excessive fees from her statements, Defendants have ignored her requests and instead have continued to report negatively on Plaintiff's consumer credit in violation of RESPA 6 and in violation of the self-effectuating mechanisms of 15 U.S.C. 1635 et. Seq. As result of Defendants' wrongful credit reporting, Plaintiff has incurred higher interest rates and payment requirements.

Defendants' actions in violating the FDCPA have caused Plaintiff actual damages in redemption fees and other exorbitant fees charged, including but not limited to attorney fees, false charges on a foreclosure in that was fraudulently devised, severe emotional distress, such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and post-traumatic stress syndrome.

As a result of Defendants' violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable attorney fees; as well as a disgorgement of profits from Defendant arising from these unlawful business activities; an injunction requiring Defendants to change its grievance review procedure to ascertain that laws are followed when banks receive grievances under TILA, CLRA, FDCPA, RESPA and other laws. Unless the court is prepared to issue such an injunction, requiring a consumer to send a grievance letter or calling them under Defendants' current policies and procedures is currently an exercise in futility.

## SEVENTH CLAIM FOR QUIET TITLE
### (Against Defendants Wells Fargo, Deutsche Bank & First American)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

Plaintiff seeks to quiet title against the claims and potential claims of the Defendants for title to the subject property by virtue of any notice of default, notice of sale or Trustee's Deed upon sale.

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

The claims of the Defendants are without any right and they have no right title, estate lien or interest in the Plaintiff's property. On this basis and as a result of Defendants' fraudulent actions as described in the claims above, Plaintiff therefore desires and is entitled to a judicial declaration quieting title in Plaintiff's interest, extinguishing forever all adverse claims, including those of all Defendants.

## EIGTH CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against all Defendants)

Plaintiff re-alleges and incorporates by reference all the allegations contained in the paragraphs above as though fully set forth herein.

Defendants' actions as described in the claims above were undertaken with reckless disregard of the high likelihood of causing emotional distress and suffering to the Plaintiff and her family.

As a direct and proximate result of the conduct and actions of Defendants and each of them, the Plaintiff has suffered severe and ongoing extreme emotional distress, pain, suffering and anxiety.

Plaintiff is therefore entitled to recover damages for the suffering caused directly and proximately by the Defendants wrongful conduct.

## REQUEST FOR JURY TRIAL
## PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, Plaintiff requests for an opportunity to discover further facts through discovery. Plaintiff requests a jury trial and prays for judgment against the Defendants, and each of them, as follows:

1. Compensatory damages in the amount of $1,000,000;

2. General damages according to proof at trial;

3. Damages according to the multiplier under RICO;

4. Prejudgment interest at 10%;

5. Punitive and exemplary damages in such an amount to be determined by the court;

PLAINTIFF'S Stipulation for revised order
CASE NO. CV11-00518 SBA

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net
Plaintiff pro se

Submitted: June 24, 2011

6. Preliminary and permanent injunction prohibiting Defendants, and each of them, their agents and employees from conveying, encumbering, hypothecating subject property or any proceeding to collect unlawful amounts from Plaintiff;

7. Order quieting title to the subject property in Plaintiff's interest as owner of the real property;

8. Reversal of all negative credit reports on the Plaintiff;

9. Accounting of all payments made to Defendants thus far on Plaintiff's mortgage and all fees and interest charged;

10. Costs of the suit;

11. Reasonable attorney fees;

12. Such other and further relief as the court may deem proper.

Respectfully submitted: June 24, 2011

Kabita Choudhuri

Kabita Choudhuri
Plaintiff, Pro Se

23        PLAINTIFF'S Stipulation for revised order
          CASE NO. CV11-00518 SBA

EXHIBIT A

**From:** kabita21@comcast.net [mailto:kabita21@comcast.net]
**Sent:** Thursday, December 15, 2005 7:04 PM
**To:** Bell, Todd
**Subject:** RE: Revised Proposal

Todd – Thanks SO much!!
Will call as soon as I can pry my kids off the phone.
kc

-------------- Original message --------------
**From:** <Todd.Bell@wellsfargo.com>
Hi Kabita!! We received the loan approval for the 2nd loan!!!

We are sending in all the conditions for final approval tomorro
along with the Wells Fargo loan. I will contact you during the
day tomorrow with my progress.

Feel free to call my cell this evening if needed.

With Gratitude,
Todd
415-336-7316

-----Original Message-----
**From:** kabita21@comcast.net
[mailto:kabita21@comcast.net]
**Sent:** Thursday, December 15, 2005 2:19 PM
**To:** Bell, Todd
**Subject:** RE: Revised Proposal

Todd,

Also one other quick question - am hoping the payme
for the 2nd is principal and interest?
tx kc

-------------- Original message --------------
**From:** <Todd.Bell@wellsfargo.com>
Hi Kabita,

I am calling your shortly. Here is the revised
proposal based upon the terms the new 2nd
mortgage lender could provide. Your middle
credit score dropped to 564 so this is the best
we can do for the immediate.

Todd

-----Original Message-----
**From:** kabita21@comcast.net



[mailto:kabita21@comcast.net]
**Sent:** Tuesday, December 13, 2005 6:17 PM
**To:** Bell, Todd
**Subject:** RE: Revised Proposal

Todd, thanks for the update - will you be calling this evening? I received the revised committment letter and it had some changes, like new stipulations and it also mentions impounding taxes...can we discuss?

tx kc

------------- Original message -------------
From:
<Todd.Bell@wellsfargo.com>

> Hi Kabita,
>
> I just talked to the underwriter for your new 2nd loan and he had me fax
> him a few documents to complete his review of your file. I will contact
> you as soon as I know more.
>
> Thank you for your patience.
>
> Todd
>
>
> -----Original Message-----
> From: kabita21@comcast.net [mailto:kabita21@comcast.net]
> Sent: Tuesday, December 13, 2005 10:04 AM
> To: Bell, Todd
> Subject: RE: Revised Proposal
>
>
> Thanks Todd - I look forward to your call.
> kc
>

(Attachments successfully scanned for viruses.)

**Attachment 1:** Choudhuri Salary LOE.doc (application/msword)

INBOX: Email 709 of 763 | Move to Folder | « Previous

CONDITIONS OF LOAN APPROVAL   (Cont'd)

o  6. LENDER TO OBTAIN BORR EMPLOYMENT VERIFICATION (VOE).        SATISFIED

o  2. (SBJ 12/19/05) THIS TRANSACTION IS SUBJECT TO "CIT"        SATISFIED
      APPROVAL OF THEIR 2ND PURCHASE MONEY LIEN ON THE FOLLOWING
      TERMS: CONDITIONS AS THE WFHM APPROVAL. $193,250 WITH A
      MONTHLY PAYMENT NOT TO EXCEED $1973.00.

o  3. (SBJ 12/19/05) COPIES OF ACCEPTABLE PAY OFF STMTS: CAL     SATISFIED
      STATE EFCU

State of _Calpornia_ } ss.

County of _Santa Clara_

I, _Kabita Choudhwi_, hereby swear (or affirm) that the
Name of Custodian of Original Document

attached reproduction of _P.6 of Conditions of Loan Agrmt_ is a true,
Description of Original Document

correct and complete photocopy of a

document in my possession.

_Kabita Choudhwi_
Signature of Custodian of Original Document

_331 Richardson Way, Mill Valley, CA 94941_
Address

Subscribed and sworn to (or affirmed)

before me on this __17__ day of
Date

__MARCH__, __2010__.
Month              Year

_Phuong-Dung Dao Chu_
Signature of Notary Public

PHUONG-DUNG DAO CHU
COMM. #1750573
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
COMM. EXPIRES JULY 10, 2011

Place Notary Seal Above

EU002L Rev. 03/08/00
Page 8

D6

*EXHIBIT B*

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
P.O. BOX 961253
FORT WORTH, TX 76161
Telephone:  877-276-1894
Telecopier:  817-699-1484

**May 15, 2009**

FILE NUMBER:        20099070809070
**KABITA CHOUDHURI**
**335 RICHARDSON WAY**
**MILL VALLEY, CA 94941**

Re:   Loan No.:        **0149141095**
        TS #:          **20099070809070**

The current creditor to whom the debt is owed is:  **Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006-8.**  The loan is serviced by **WELLS FARGO HOME MORTGAGE.** FIRST AMERICAN LOANSTAR TRUSTEE SERVICES has been authorized by the Servicer/Creditor to initiate foreclosure proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan.

The amount of the debt as of the date of this Notice according to the records of our client is **$750,225.84.**    The amount necessary to bring the loan into good standing and reinstate your mortgage is set forth in the enclosed Notice of Default and Election to Sell Under Deed of Trust.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above or in the enclosed Notice of Default and Election to Sel Under Deed of Trust, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection.  For further information, write the undersigned or call 877-276-1894.

Please be advised that FIRST AMERICAN LOANSTAR TRUSTEE SERVICES may be considered a debt collector attempting to collect the above referenced debt.  Any information obtained from you may be used for that purpose. Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it.  If you don't dispute it within that period, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will assume that it's valid.  If you do dispute it - - by notifying FIRST AMERICAN LOANSTAR TRUSTEE SERVICES in writing to that effect - - FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will, as required by the law, obtain and mail to you proof of the debt.  And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will furnish you with that information too.

The law does not require FIRST AMERICAN LOANSTAR TRUSTEE SERVICES to wait until the end of thirty-day period before taking action to collect this debt.  If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires LoanStar to suspend its efforts (through litigation or otherwise) to collect the debt until FIRST AMERICAN LOANSTAR TRUSTEE SERVICES mails the requested information to you.

The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftd.gov.

Sincerely,

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

EXHIBIT C

2/16/2011 — 2247034815

Recording Requested By:
**First American Title Insurance Company**

When Recorded Mail To:
**First American Trustee Servicing Solutions, LLC, as Trustee**
**6 Campus Circle, 2nd Floor**
**Westlake, TX 76262**

| | |
|---|---|
| TSG No.: | 4120879 |
| TS No.: | 20099070809070 |
| FHA/VA/PMI No.: | |
| APN: | 049-171-04 |

Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **12/20/2005**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **03/08/2011** at **09:30 A.M.**, **First American Trustee Servicing Solutions, LLC, as Trustee**, as duly appointed Trustee under and pursuant to Deed of Trust recorded **12/28/2005**, as Instrument No. **2005-0097133**, in book , page , , of Official Records in the office of the County Recorder of **Marin** County, State of CALIFORNIA. Executed by:

**KABITA CHOUDHURI,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) **Outside at the Southwest corner of San Rafael City Hall 1400 Fifth Ave. San Rafael, CA**

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# **049-171-04**

The street address and other common designation, if any, of the real property described above is purported to be:

**331- 335 RICHARDSON WAY, MILL VALLEY, CA 94941**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$800,098.56**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

**Date: 02/16/2011**

**First American Title Insurance Company**
**First American Trustee Servicing Solutions, LLC, as Trustee**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707**

**First American Trustee Servicing Solutions, LLC, as Trustee MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Original document signed by Authorized Agent
-- FOR TRUSTEE'S SALE INFORMATION PLEASE CALL **714-573-1965**



EXHIBIT D

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

1

2

3

4

5

6

7

EXHIBIT $D$

8

FACTUAL AND LEGAL CONTENTIONS THAT ARE IN DISPUTE

9  Plaintiff presents in the table below only those factual and legal contentions
10 relevant for purposes of this mandatory settlement conference, with additional
contentions and authorities to be presented at the trial.

11

| FACTUAL AND LEGAL CONTENTIONS | CITATIONS OF AUTHORITIES |
|---|---|
| Plaintiff intended and DID file her action against Defendants "Todd Bell and Wells Fargo Home Mortgage (Wells Fargo Bank N.A.)", although Defendants' attorneys have taken great pains to state in each and every one of their filings that plaintiff "erroneously" did so. | It is not up to the Defendants to state that plaintiff erred in her filing. This court must disallow these machinations by Defendants' attorneys. See plaintiff's request for judicial notice October 2, *KC* 2009. |
| A "special relationship" exists between the Defendants and the plaintiff since a contract to perform services gives rise to a duty of care which requires those services to be performed in a competent and reasonable manner. A "special relationship" exists under the contract the plaintiff signed with the Defendants, since 1) the transaction affected the plaintiff greatly, in Defendants' attorneys' own words "likely the most significant contract" of plaintiff's life 2) the foreseeability of harm to the plaintiff was extremely high 3) high degree of certainty that the plaintiff has suffered injury 4) the high degree of closeness of the connection between the Defendants' conduct and the injury suffered by plaintiff 5) moral blame attached to Defendants' conduct 6) the court must have a policy of preventing future harm to plaintiff as well as all others in like situations | [J'Aire Corp. v. Gregory (1979) 24 Cal. 3d 799, 804; North American Chemical Co. v. Sup Ct (1997) 59 Cal.App. 4th 764, 787; walis v. Sup. Ct.(1984) 160 Cal.App. 3d 1109, 1116-7] |
| Defendant Todd Bell acted with the permission and consent of Defendant corporation, Wells Fargo Bank N.A. He expressly told plaintiff he had obtained his manager's permission to safeguard the full cash-out proceeds of the loan. This allegation in Plaintiff's complaint is sufficient to for exemplary damages purposes. | Civil Code §3294(c); [O'Hara v. Western Seven Trees Corp. (1977) 75 Cal. App. 3d 798]. |
| Defendants have claimed they are immune from duty of care or fiduciary liability since they are a national bank, just as | Courts are more and more inclined to tighten the leash on lenders holding them accountable for the current sub-prime |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

1 earlier they attempted to transfer their liability to their servicers and the title

2 company.

3 The relationship between the Defendants, Todd Bell, a licensed mortgage broker, by

4 his own admission at deposition to have been trained no less than on 5 different

5 occasions on the "best practices" of his employer, Wells Fargo Bank N.A. and the

6 plaintiff is inherently unbalanced, in that the plaintiff placed her complete

7 trust in the Defendants' superior knowledge of the mechanics and

8 ramifications of the contract. In recognition of the bank's underlying

9 obligations to safeguard the interests of their clients, this court must restore

10 balance in the contractual relationship by imposing punitive damages for the breach

11 of fiduciary duty. [Egan v. Mutual of

12 Omaha Ins. Co. (1979) 24 Cal.3d 809].

13 This court must find that the national charter does not protect them or their

14 agent, Todd Bell from liability under TILA, RESPA, FDCPA or from liability

15 imposed by California Business and Professions Code, particularly since they

16 have committed and continue to commit FRAUD.

17

18 *Under Civil Code 1708 and High V.*

19 *McLean Financial Corp., 659 F. Supp.*

20 *1561, 1570 (D.D.C. 1987); Jacques v.*

21 *First National Bank of Maryland,*

22 *337 Md. 527, 515 A.2d 756, 763 (1986)*

23 *on remand to 69 Md. App. 790, 69 Md.*

24 *App. 794 (1986) a lender owes the*

25 *same duty of care as any other*

26 *person not to cause an unreason-*

27 *able risk of injury to the person*

28 *or property of others, a duty of*
*care that extends to borrowers*
*and prospective borrowers.*
*[Smith v. Schuttpelz, 1 Cal. 2d 158].*
*CA Real Estate Code 3D, Lenders' Liab. §365*

29 Defendant Todd Bell induced plaintiff, Kabita Choudhuri to sign the written

30 contract which forms the basis of this action, by luring her into the deal with

31 promise of a certain sum in cash-out from a 30 year fixed rate loan for $712,000

32 with Wells Fargo Bank N.A., contingent upon a 2nd loan for $193,000 with CIT for

---

mess. The preemption issue resurfaced on Oct. 6, 2009 when a group of states succeeded in pressuring Bank of America's Countrywide Financial mortgage unit to resolve pending suits by setting aside $8.4 billion for borrowers. "This agreement demonstrates the effectiveness of states in addressing predatory lending...proving states should not be preempted by federal legislation," said California AG Jerry Brown. In Maisel, 378 B.R. 19 (Bankr. D. Mass. 2007) Judge Joel B. Rosenthal, wrote in a decision that Wells Fargo "turned all responsibilities over" to the servicer but "turn[ed] a blind eye" to the servicer's mistakes. Had the company "shown even a modicum of oversight or review" of the servicer's behavior, "it should have been able to correct the misrepresentations" made to the court. He added: "This court will not allow Wells Fargo or any other [mortgage holder] to shirk responsibility by pointing fingers at their servicers. As a result, the Court sanctioned the local law firm that had been prosecuting the claim $25,000. It sanctioned a partner at that firm an additional $25,000. Then the Court sanctioned the national law firm involved $100,000 and ultimately sanctioned Wells Fargo $250,000. Id. at 382-386." In In re Foreclosure Cases, 2007 WL 3232430 at *3, n.1., "The Court has had to expend time and resources, as have debtors already burdened in their attempts to pay their mortgages, because of the carelessness of those in the residential mortgage industry and the bombast this Court and others have encountered when calling them on their shortcomings". In 2010 Tex. App. LEXIS 2187, OLGA (CHAPA) VILLARREAL AND ISREAL CHAPA, Appellants v. WELLS FARGO BROKERAGE SERVICES, LLC, WELLS FARGO INVESTMENTS, LLC, AND CHARLES J. LEWIS, JR., Appellees NO. 01-08-00258-CV COURT OF APPEALS OF TEXAS, FIRST DISTRICT, HOUSTON 2010 Tex. App. LEXIS 2187 March 11, 2010, Opinion Issued affirming the judgment of the trial court to the extent that it granted summary judgment on the Chapas' claims against Lewis for breach of the duty of good faith and fair dealing, negligent misrepresentation, negligence, and DTPA violations.

TILA violation: § 226.19(2)(ii) If the annual percentage rate disclosed under paragraph (a)(1)(i) of this section becomes inaccurate, as defined in §226.22, the creditor shall provide corrected disclosures with all changed terms. The consumer must receive the corrected disclosures no later than three business

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | | |
|---|---|---|
| 1<br>2<br>3 | many weeks prior to signing, but advised her, **_without_** sending her a counter-offer letter, of changed terms of the loan(s) less than 24 hours prior to signing, violating TILA disclosure requirements. | days before consummation. Bell advised plaintiff less than 24 hours before signing and did not send the counter-offer letter until after the contract closed. |
| 4<br>5<br>6 | The changed terms included a drastic change in the interest rate structure from a 30 year fixed to a 2/6 ARM, with a reduced principal amount to $679,000 and therefore a reduced cash-out amount of ~$8,000 and a revoked 2nd loan from CIT. | TILA violation: § 226.19(2)(ii) |
| 7<br>8<br>9<br>10<br>11<br>12<br>13 | In discovery, plaintiff found that although he knew of changed terms well before he advised the plaintiff of them [Defendant Wells Fargo oddly waived the requirement for a signed counter-offer letter on December 8, 2005], he waited till just hours before signing on December 22, 2005 to advise the plaintiff, thereby depriving her of the requisite legal time to review changed terms before signing of the loan. The changed terms notice in loan files is dated December 20, 2005 providing less than the prescribed 3 days' notice before consummation. | TILA violation: § 226.19(2)(ii) If the annual percentage rate disclosed under paragraph (a)(1)(i) of this section becomes inaccurate, as defined in §226.22, the creditor shall provide corrected disclosures with all changed terms. The consumer must receive the corrected disclosures no later than three business days before consummation. Bell advised plaintiff less than 24 hours before signing and did not send the counter-offer letter until after the contract closed. |
| 14<br>15<br>16<br>17 | Plaintiff signed the loan because she believed his assurances that he could assist her in 1) refinancing her loan to better terms and/or 2) finding a 2nd loan to replace the revoked CIT loan. Bell later denied this but email trails prove he lied under oath. | Civil Code §1710(4), see also inducement |
| 18<br>19<br>20<br>21<br>22 | To this day, Defendants have not explained why or by whom the CIT loan was revoked, since it appears **_to this day_** on loan closing documents as 1) a **"SATISFIED"** contingency for the Wells loan, and 2) having been approved and in place 3) Bell refused to amend loan documents that plaintiff signed, even though she explicitly requested the changes, he claimed the discrepancies were "accepted daily practice" for Wells Fargo Bank | TILA violation: Discrepancies in loan documents nullify the contract. |
| 23<br>24<br>25<br>26 | Loan documents are all dated December 20, 2005 and although Plaintiff requested they be amended to reflect the correct date of December 22, 2005, Bell refused, claiming that it was "normal everyday business practice" at Wells Fargo to entertain these discrepancies in legal documents. | TILA violation: Discrepancies in loan documents nullify the contract. |

27

28

29

30

31

32

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| The loan documents signed by the plaintiff on December 22, 2005 constitute a legal written contract, which forms the basis of this action.<br>• The statute of limitations governing this written contract is 4 years.<br>• The statute of limitations governing fraud actions is 3 years, as it is for actions under TILA.<br>• Plaintiff filed this action on June 26, 2008 well before the expiration of either or both these statutes of limitations. | This court's decision of 4/20/09: "DEFENDANTS' STATUTE OF·LIMITATIONS ARGUMENT IS MISPLACED, BECAUSE EVEN IF ANY CLAIMS REGARDING THE LOAN ORIGINATION WERE BARRED BY A TWO-YEAR STATUTE OF LIMITATIONS, THIS WOULD NOT DISPOSE OF THE ENTIRE CAUSE OF ACTION." |
| At time of signing the contract, Defendant Todd Bell handed plaintiff the "Notice to Cancel" with December 23, 2005 as the latest date to cancel the loan. Plaintiff's original Notice has this incorrect date; however, Defendants later illegally post-dated their copy of the Notice, trying to include it as evidence in discovery, committing further fraud. Plaintiff therefore contends that Defendants NEVER delivered to her the correct disclosures or the Notice of rescission. TILA prescribes a 3-year right of rescission under these circumstances. | TILA violation: § 226.23  Right of rescission (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. |
| Punitive damages may be awarded together with rescission to a party fraudulently induced to enter a contract | [In re Marriage of McNeill (1984) 160 Cal. App. 3d 548; Millar v. James (1967) 254 Cal. App. 2d 530; Douglas v. Ostermeier (19910 1 Cal.App.4th 729] |
| Plaintiff signed the contract upon the oral promise of her mortgage broker, Todd Bell that taxes would not be paid out of cash out proceeds from loan, another promise that he reneged upon. These promises constitute fraudulent inducement. Plaintiff may therefore recover all damages proximately caused by the breach of contract, not just those that were direct or foreseeable, since the breach was in bad faith and may be deemed tortious fraud. | CA Supreme Court: "Generally, outside the insurance context, 'a tortious breach of contract…may be found when 1)the breach is accompanied by a traditional common law tort, such as fraud or conversion; 20 the means used to breach the contract are tortious, involving deceit or undue coercion 3)one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship or substantial consequential damages" [Robinson Helicopter Company, Inc. v. Dana Corporation (2004) 34 Cal 4th 979, 991 quoting Erlich v. Menezes (1999) 21 Cal 4th at 553-554; Pistorius v. Prudential Ins. Co. (1981) 123 Cal.App.3d 541; miller v. Elite Ins. Co. (1980) 100 Cal App. 3d 161; Richardson v. Employers Liab. Assur. Co. (1972) 25 Cal.App.3d 232]. |
| The statute of limitations governing oral contracts is 2 years; however the basis of this action is a written contract governed by the 4-year statute of limitations for breach of contract action, a contract which plaintiff signed only because | Fraudulent inducement: Civ. Code §1710(4); [Glendale Fed. Sav. & Loan Assoc v. Marina View Heights Dev. Co. (1977) 66 Cal. App. 3d 101; Miller v. National American Life Ins. (1976) 54 Cal.App. 3d 331, 336; Overstreet v. Merritt (1921) 186 Cal. 494, |

Kabita Choudhuri
131 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| Defendant Todd Bell induced the Plaintiff with false promises. His fraud and deceit therefore extend even the statute of limitations governing his oral promise. *Bell admitted this to his attorney, Steve Dailey, who advised plaintiff of his admissions on Oct. 16, 2008.* | 505, 200 P 11; Kline v. Guaranty Oil Co. (1914)167 Cal. 476, 483 140 P. 1; Walker v. Signal Companies, Inc. (1978) 84 Cal.App. 3d 982, 994-996; Robinson Helicopter Company, Inc. v. Dana Corporation (2004) 34 Cal 4th 979, 991 quoting Erlich v. Menezes (1999) 21 Cal 4th at 553-554] |
| Well before and at the time that plaintiff signed the contract, plaintiff, by email, telephone conversations and face-to-face meeting at signing, advised and brought to the attention of Defendant Todd Bell that unless the full cash-out proceeds were available to the plaintiff for debt consolidation and payment of debt, she was 1) not interested in the loan, 2)irreparable harm to plaintiff would ensue if this debt was not taken care of. | In her complaint, plaintiff has alleged that Defendant knew of the special purpose plaintiff intended to be accomplished and that the failure to accomplish it would cause greater damage than would ordinarily follow from a breach by the defendant. Special damages are therefore justified. [Mitchell v. Clarke(1886)71 Cal. 163, 164, 168, 11P882] |
| In discovery, plaintiff found incontrovertible proof of fraud in the falsified anti-predatory worksheet submitted by Defendants, in which they indicated "zeros" for both origination as, well as discount fees, whereas in reality, Defendants charged plaintiff in excess of $7,000 in these direct fees. | TILA violation: 226.35   Prohibited acts or practices in connection with higher-priced mortgage loans. |
| In discovery, plaintiff found that although in reality Defendants had subjected plaintiff's loan to a highly predatory pre-pay requirement of 3% in year 1, 2% in year 2 and 1% in year 3, they fraudulently indicated no such prepay term in the HUD filings. | TILA violation: § 226.32 (7)Prepayment penalties may be included unless…(iii) At consummation, the consumer's total monthly debt payments (including amounts owed under the mortgage) do not exceed 50 percent of the consumer's monthly gross income, as verified in accordance with §226.34(a)(4)(ii); and

(iv) The amount of the periodic payment of principal or interest or both may not change during the four-year period following consummation. |
| In discovery, plaintiff found that Defendants had falsified her loan documents by 1)forging her signature on the loan application and other documents 2)inflating her income ~300% despite having her W2s and a letter from her employer verifying her income | TILA violation: § 226.32 |
| In discovery, plaintiff found that Todd Bell destroyed all his notes and files relating to plaintiff's loan before the time prescribed by law. | TILA violation: § 226.25   Record retention. (a) General rule. A creditor shall retain evidence of compliance with this regulation (other than advertising requirements under §§226.16 and 226.24) for 2 years after the date disclosures are required to be made or action is required to be taken. The administrative agencies responsible for enforcing the regulation may require creditors under their jurisdictions to retain records for a longer period if necessary to carry out their enforcement responsibilities under section 108 of the act. (b) Inspection of records. A creditor shall permit the |

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| Defendant Todd Bell induced the Plaintiff with false promises. His fraud and deceit therefore extend even the statute of limitations governing his oral promise. *Bell admitted this to his attorney, Steve Dailey, who advised plaintiff of his admissions on Oct. 16, 2008.* | 505, 200 P 11; Kline v. Guaranty Oil Co. (1914)167 Cal. 476, 483 140 P. 1; Walker v. Signal Companies, Inc. (1978) 84 Cal.App. 3d 982, 994-996; Robinson Helicopter Company, Inc. v. Dana Corporation (2004) 34 Cal 4th 979, 991 quoting Erlich v. Menezes (1999) 21 Cal 4th at 553-554] |
| Well before and at the time that plaintiff signed the contract, plaintiff, by email, telephone conversations and face-to-face meeting at signing, advised and brought to the attention of Defendant Todd Bell that unless the full cash-out proceeds were available to the plaintiff for debt consolidation and payment of debt, she was 1) not interested in the loan, 2)irreparable harm to plaintiff would ensue if this debt was not taken care of. | In her complaint, plaintiff has alleged that Defendant knew of the special purpose plaintiff intended to be accomplished and that the failure to accomplish it would cause greater damage than would ordinarily follow from a breach by the defendant. Special damages are therefore justified. [Mitchell v. Clarke(1886)71 Cal. 163, 164, 168, 11P882] |
| In discovery, plaintiff found incontrovertible proof of fraud in the falsified anti-predatory worksheet submitted by Defendants, in which they indicated "zeros" for both origination as, well as discount fees, whereas in reality, Defendants charged plaintiff in excess of $7,000 in these direct fees. | TILA violation: 226.35   Prohibited acts or practices in connection with higher-priced mortgage loans. |
| In discovery, plaintiff found that although in reality Defendants had subjected plaintiff's loan to a highly predatory pre-pay requirement of 3% in year 1, 2% in year 2 and 1% in year 3, they fraudulently indicated no such prepay term in the HUD filings. | TILA violation: § 226.32 (7)Prepayment penalties may be included unless…(iii) At consummation, the consumer's total monthly debt payments (including amounts owed under the mortgage) do not exceed 50 percent of the consumer's monthly gross income, as verified in accordance with §226.34(a)(4)(ii); and<br><br>(iv) The amount of the periodic payment of principal or interest or both may not change during the four-year period following consummation. |
| In discovery, plaintiff found that Defendants had falsified her loan documents by 1)forging her signature on the loan application and other documents 2)inflating her income ~300% despite having her W2s and a letter from her employer verifying her income | TILA violation: § 226.32 |
| In discovery, plaintiff found that Todd Bell destroyed all his notes and files relating to plaintiff's loan before the time prescribed by law. | TILA violation: § 226.25   Record retention. (a) General rule. A creditor shall retain evidence of compliance with this regulation (other than advertising requirements under §§226.16 and 226.24) for 2 years after the date disclosures are required to be made or action is required to be taken. The administrative agencies responsible for enforcing the regulation may require creditors under their jurisdictions to retain records for a longer period if necessary to carry out their enforcement responsibilities under section 108 of the act. (b) Inspection of records. A creditor shall permit the |

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| 1 | agency responsible for enforcing this regulation with respect to that creditor to inspect its relevant records for compliance. |
| 2 | |
| 3 | Defendants' constructive fraud activities are evident in that, rather than canceling the loan as the plaintiff requested, Bell then proceeded to wash his hands of the case, referring her instead to customer service agents who fraudulently foreclosed on the account, extorted excessive fees unrefunded to date; within weeks of having closed her loan, Bell referred the plaintiff to his "friend" Jonas Eckland who immediately insisted plaintiff needed her "credit repaired" by another "friend" who claimed it would cost $2500 to repair her credit, a suggestion plaintiff declined to accept. |
| 4 | |
| 5 | Civil code §3294(a); Fraud is defined (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. |
| 6 | |
| 7 | Constructive fraud: _See below_ * |
| 8 | |
| 9 | |
| 10 | |
| 11 | Ample evidence exists of Bell's deliberate fraud, oppression and malice aforethought establishing Defendants' liability for tort damages; and fraud, oppression and malice sufficient to sustain an award of punitive damages. |
| 12 | |
| 13 | [Haigler v. Donnelly (1941) 18 Cal. 2d 674, 680-682; Walker v. Signal Companies (1978) 84 Cal. App. 3d 982, 996 (fraudulent inducement to enter contract); Foster v. Keating (1953) 120 Cal.App. 2d 435, 454-455 (fraud, conversion, breach of fiduciary duty, breach of contract)]. |
| 14 | Plaintiff's complaint pleads a cause of action for punitive damages since conscious disregard of the safety of others may constitute malice within the meaning of Civil Code §3294. Defendants willfully and consciously disregarded the safety of plaintiff and her family. In her complaint, Plaintiff has alleged that Bell willfully committed the wrong with a design to injure. Defendants' agents including Bell, customer service and foreclosure agents active in constructive fraud with a conscious disregard of plaintiff's rights and with intent to vex, injure and annoy [by calling 7 or 8 times in a single day and often at 5 or 6 a.m.] Bell's wanton, intentional and reckless misconduct in failing to advise plaintiff of material change in contract terms caused the plaintiff injury and set her on a path spiraling toward financial hardship. In cases of intentional tort, malice is properly pleaded by alleging the wrongful motive, intent or purpose and a general allegation of intent is sufficient to support a claim for exemplary damages. |
| 15 | Civil Code §3294(c)(1)Unruh v. Truck Ins. Exch. (1972) 7 Cal.3d 616, 632; G.D. Searle & Co. v. Superior Court (1975) 49 Cal. App. 3d 22, 29; Nolin v. National Convenience Stores (1979) 95 Cal.App. 3d 279, 286; Taylor v. Superior Court (1979) 24 Cal 3d 890; Donnelly v. Southern Pac. Co. (1941) 18 Cal.2d 863, 869-703]. |
| 16 | |
| 17 | |
| 18 | |
| 19 | This court has already found the allegation sufficiently pleaded in its decision of 8/10/09. |
| 20 | |
| 21 | Defendants have claimed nonintentional tort but, Bell performed an act so, willful, unreasonable and dangerous that he knew or should have known of the high probability that harm would result. Such a tort is more accurately described as "wanton and reckless misconduct". |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| 1 Plaintiff had a duty under the contract to | This court's ruling of 08/10/09:"IN LIGHT |
| 2 mitigate damages and therefore rented her | OF THE RULING [denying] ON THE DEMURRER TO |
| house out while renting lower-cost | THE 3rd CAUSE OF ACTION, DEFENDANTS' |
| 3 facilities for her family. For those two | MOTION TO STRIKE PORTIONS OF THE AMENDED |
| years, Defendants are liable for direct | SAC IS DENIED AS TO THE ALLEGATIONS |
| 4 economic loss and loss of use and | REGARDING PUNITIVE DAMAGES, EMOTIONAL |
| enjoyment of plaintiff's legally owned | DISTRESS, AND LOST WAGES." |
| 5 property by her and her family. Punitive | |
| damages and emotional distress costs are | "If aggrieved party does expend sums in a |
| 6 also applicable. | reasonable effort to avoid losses |
| 7 [*Unruh Civil Rights Act, sections 51.7,* | resulting from a breach of contract, those |
| 8 *52.1 seeks to protect individuals peace-* | expenses are recoverable as damages". |
| *able exercise or enjoyment of constitutional* | Brandon & Tibbs v. George Kerkovian Acct. |
| 9 *statutory rights, penalties of $25,000 to be* | Corp. (1990) 226 Cal.App. 3d 442, 460- |
| *assessed against each defendant].* | 461]. |
| 10 Defendants' deliberate and intentional | [Fletcher v. Western National Life Ins. |
| 11 fraud acts as well as their callous non- | (1970) 10 Cal.App.3d 376; Chelini v. Nieri |
| observance of the court's injunction | (1924) 68 Ca.App. 198, 208-9; Rogoff v. |
| 12 caused plaintiff immense emotional pain in | Grabowski (1988) 200 Cal.App.3d 624 |
| the loss of use of her home as well as the | (damages for emotional distress may be |
| 13 loss of companionship of her daughter. In | recovered in an action from breach of |
| her complaint, Plaintiff has requested | contract if mental suffering or emotional |
| 14 damages for emotional and physical | distress was a foreseeable and |
| suffering, including costs incurred beyond | contemplated result of its breach; Crisci |
| 15 insurance coverage for treatment for pain | v. Security Ins. Co. (1967) 66 Cal.2d 425 |
| and chiropractic treatment for stress | in which the court expressly rejected |
| 16 symptoms manifested in back and neck pain. | strict application of the impact or injury |
| Damages for mental suffering and physical | requirement reasoning that where an |
| 17 injury are recoverable where contract | actionable claim has resulted in |
| relates to comfort, happiness or personal | substantial damages apart from emotional |
| 18 welfare; emotional distress damages | distress, the danger of fictitious claim |
| recoverable if Defendant acted | is greatly reduced. Thus, if the plaintiff |
| 19 intentionally. Interference with one's | was deprived of use of his real property, |
| legally protected interests is sufficient | he may reasonably have been said to have |
| 20 damage to satisfy "substantial damage" | suffered substantial damages]. |
| test and to warrant damages for emotional | |
| 21 distress. | |
| Having spent 2 years unsuccessfully to | See above cell for court's prior ruling. |
| 22 resolve this case outside of the court, | |
| Plaintiff's preoccupation with this case | |
| 23 from June 2008 onward caused frequent | |
| absences from work for appearances, | |
| 24 research and filings, leading to her loss | |
| of job in November 2008. | |
| 25 Billing errors, incorrect interest rate | TILA violation: § 226.13 Billing error |
| applications and non-applied and | resolution. (2) The creditor shall comply |
| 26 misapplied payments notified by the | with the appropriate resolution procedures |
| plaintiff to the Defendants went | of paragraphs (e) and (f) of this section, |
| 27 unacknowledged. Plaintiff subsequently | as applicable, within 2 complete billing |
| sent these notifications to Defendants' | cycles (but in no event later than 90 |
| 28 attorneys, who simply ignored or returned | days) after receiving a billing error |
| her communication having taken zero | notice. |
| 29 action. | |
| Defendants added $43,000+ to plaintiff's | RESPA violation: Real Estate Settlement |
| 30 escrow account in June 2008, **after** | Procedures Act (12 U.S.C. 2601 et seq. ) |
| plaintiff filed this action, claiming they | RESPA §10 prohibits a lender from charging |
| 31 had paid property taxes. It was merely a | excessive amounts for the escrow account. |
| device to inflate plaintiff's monthly | The lender may require a borrower to pay |
| 32 payments from $4207 to >$7,000. Plaintiff | into the escrow account no more than 1/12 |
| discovered they paid **none** of these funds | of the total of all disbursements payable |

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA
94941
415-888-8685
kabita21@comcast.net

| | |
|---|---|
| until November 2008, all the while charging plaintiff late fees. In their latest declarations under oath, Defendants' officer Jamie Walls stated falsely that the total amount paid for taxes to date is $58,000, however at June 2008, plaintiff had owned the property only since 2004 and had paid her 2004 full year taxes, plus 2005 first installment herself;  2005 2nd installment and 2006 full year taxes as part of her monthly payments to Wells Fargo; 2007 first installment to the county herself; had an installment plan in place with the county and specifically advised Defendants of the existence of this installment plan and that her taxes were under review, scheduled for hearing in early 2010. Therefore, 1) What was the $58,000 for? 2) Since there was no danger or a tax lien taking precedence over the mortgage until the 2012 timeframe, there was no urgency for these funds to be added to escrow. | during the year, plus an amount necessary to pay for any shortage in the account. In addition, the lender may require a cushion, not to exceed an amount equal to 1/6 of the total disbursements for the year.

Roy Given testimony at deposition of February 24, 2010. Plaintiff cannot afford to purchase a copy of the deposition testimony, the court should request a copy from the defendants.

Plaintiff intends to request his appearance at trial if defendants will not provide a copy of the record. |
| Defendants almost immediately thereafter made it impossible for the plaintiff to pay her monthly mortgage payments to the bank, claiming instead that plaintiff was in default. | See Plaintiff's request for judicial notice of 10/02/09. |
| Plaintiff's request for judicial notice at the time of requesting default judgment in December 2009, had cited Indymac Bank F.S.B. v Yano-Horoski(2009) NY Slip Op 52333(U), Decided on November 19, 2009, Supreme Court, Suffolk County, Spinner, J. In that case, in which Wells Fargo Bank Minnesota National Association was Trustee for Soundview Home Equity Loan Trust 2001-1, Judge Spinner ordered the mortgage note "cancelled, voided, avoided, nullified, set aside and is of no further force and effect; and" further assigned title free and clear to the defendants. Since then more than 350 similar cases across the United States have been recorded. | Civil Code §3300 For the breach of an obligation arising from contract, the measure of damages… is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. §3304 states the detriment caused by the breach of a covenant …to "quiet enjoyment," in a grant of an estate in real property, is deemed to be:<br>   1. The price paid to the grantor; or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property;<br>   2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years;<br>   3. Any expenses properly incurred by the covenantee in defending his /her possession. |

- 10

# CERTIFICATE OF SERVICE

*\*Use this form to show that a paper or document (other than a complaint) was served (sent or delivered) to an opposing party in accordance with Federal Rule of Civil Procedure 5. A different form is needed to serve a complaint under Federal Rule of Civil Procedure 4.\**

**Case name:**   Choudhuri v. Wells Fargo Bank, N.A. et al

**Case number:**   CV11-00518 SBA

**What document was served?** *(Write the full name or title of the document or documents, e.g., "Plaintiff's Opposition to Defendant's Motion for Summary Judgment.")*

Title(s):   First amended Complaint.

**How was the document served?** *(Check one.)*

- [X] Placed in U. S. Mail
- [ ] Sent by fax
- [ ] Hand-delivered
- [ ] Sent by delivery service (e.g., FedEx or UPS)

**To whom was the document sent?** *(Write the full name, address, and fax number of everyone who was sent the document. Usually, they will be the lawyers for the opposing parties.)*

1.Wells Fargo Bank, N.A., & 2. Deutsche Bank USA, c/o Severson & Werson, One Embarcadero, Ste 2600, San Francisco, CA 94111. 3. First American c/o Wright Finlay & Zak, LLP, 4665 MacArthur Court, Ste. 280, Newport Beach, CA 92660 4. Todd Bell & 5. Meg DeGroote c/o Wells Fargo, 420 Montgomery St. 40 hoy Gould P.C. 1801 Century Park East, San Francisco, CA 94104 6. CIT Group, 11 W42 St, NY, NY 10036 Ste 1600, L.A., CA. 90067

**When were the documents served?** *(When were they mailed, faxed, or delivered?)*

Date:   June 27/11

**Who served the documents?** *(Who put it into the mail, faxed it, hand-delivered it, or sent it by delivery service? That person should print his/her name and address and sign below.)*

I declare under penalty of perjury under the laws of the United States of America that the information in this certificate of service is true and correct.

Signature:   _Wm Timmel_

Printed name:   _Evan Timmel_

Address:   _336 Bon Air Ctr, Greenbrae CA 94904_

CERTIFICATE OF SERVICE [VLSP TEMPLATE]