UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KABITA CHOUDHURI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.; CIT GROUP, INC.; FIRST AMERICAN LOAN STAR; DEUTSCHE BANK USA; TODD BELL AND MEG DEGROOTE,<br><br>　　　　Defendants. | Case No: C 11-00518 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Dkt. 70, 71, 72, 82 and 87 |

　　　　Plaintiff Kabita Choudhuri, acting pro se, filed the instant action against Wells Fargo Bank, N.A. ("Wells Fargo"), Vericrest Financial, Inc. ("Vericrest"), CIT Group Inc. ("CIT"), First American Trustee Servicing Solutions LLC ("First American"), Deutsche Bank USA ("Deutsche Bank"), Todd Bell ("Bell") and Meg DeGroote ("DeGroote"), accusing them of having engaged in fraudulent mortgage practices in connection with a mortgage obtained by Plaintiff on December 22, 2005.[1] The Court previously granted Defendants' motion to dismiss with leave to amend. On June 27, 2011, Plaintiff filed her First Amended Complaint ("FAC"), which alleges federal claims under the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA") and the

---

[1] Plaintiff erroneously sued Defendant First American as "First American Loan Star." Defendant Vericrest is the successor in interest to The CIT Group/Consumer Finance, Inc., erroneously sued as "The CIT Group."

Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as causes of action predicated on state law.

The parties are presently before the Court on Defendants' separate motions to dismiss the FAC. Dkt. 70, 71 and 72.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motions as to Plaintiff's federal claims and declines to assert supplemental jurisdiction over her state law causes of action.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

   A.  **FACTUAL SUMMARY**

   1.  **The Pleadings**

The following facts are taken from the FAC and are presumed true for purposes of the instant motions to dismiss.  On November 5, 2005, Plaintiff submitted an application to Wells Fargo to refinance her home located at 331 Richardson Way, Mill Valley, California ("the Property").  FAC at 2, Dkt. 48.  In response, an unidentified "banker" allegedly advised Plaintiff that she did not qualify for a "regular" mortgage, but that she might be eligible for a sub-prime mortgage.  Id.  Plaintiff's file was then sent to Bell, a mortgage broker and employee of Wells Fargo.  Id.  Bell informed Plaintiff that she would qualify for a loan amount of $712,000 with no points or fees.  Id. at 4.  On November 20, 2005, Bell further advised Plaintiff she qualified for a second loan from CIT in the amount of $192,000.  Id.  On December 12, 2005, Bell emailed Plaintiff and assured her that the loan documentation was being prepared and would be ready for her signature the following week.  Id.

A Wells Fargo appraiser appraised the Property on December 20, 2005.  Id.[2]  On December 21, 2005, Bell advised Plaintiff that because the Property appraised for an amount lower than anticipated, she would only qualify for a loan in the amount of

---

[2] The FAC alleges that the appraisal took place on "December 20, 2011," which obviously is a typographical error.

$649,000, as opposed to $712,000.  Id.  In addition, Bell stated that Plaintiff no longer qualified for the second loan because her credit score had declined.  Id.  Later in the evening, Bell further advised Plaintiff that because of her lower credit score, the terms of her $649,000 loan had changed and that she, in fact, would be charged fees and points.  Id. at 5.  Although Bell supposedly stated that the charges "were already included in the $649,000 note," Plaintiff claims that the charges were not disclosed until after she signed her loan documents.  Id.  Plaintiff claims that she requested written notice "as required by TILA" from Bell and CIT but that they never provided the requested documentation.  Id.  She alleges that Bell, Wells Fargo and CIT colluded to reduce the amount of her loan "in order to place her finances in peril and pre-dispose her to foreclosure."  Id. at 4-5.

On December 22, 2005, Plaintiff signed loan documents for a mortgage in the amount of $649,000 which was secured by a deed of trust on the Property.  Id. at 6. According to Plaintiff, Bell was the only person present at the time Plaintiff signed the documents, and that he was acting as her fiduciary.  Id.  She alleges that he violated "TILA, RESPA, and other statutes and regulations" by failing to disclose the fees and costs associated with the loan prior to the time that she executed loan documents.  Id.  In addition, Plaintiff claims that Bell colluded with Wells Fargo underwriter Meg DeGroote and CIT to "falsify loan documents" which, in turn, placed her at risk for "inevitable foreclosure."  Id. at 7.

Unbeknownst to Plaintiff, Bell had directed that the "cash-out" from the refinancing proceeds be reduced from $8,000 to $2,000, for payment of taxes "that were not yet overdue."  Id.  Plaintiff was in transit from December 23 to 25 on a European vacation, and therefore, was unaware of the cash-out reduction which, in turn, resulted in many of her scheduled payments not to clear.  Id.  Between December 28, 2005 and June 2008, Plaintiff demanded rescission of the loan, "but Wells Fargo refused to consider her requests for rescission or loan modification."  Id. at 8.  Instead, beginning in or about August 2007, Wells Fargo began the foreclosure process.  Id.

### 2.     Prior State Court Action

On June 26, 2008, Plaintiff filed a pro se action in Marin County Superior Court against Bell and Wells Fargo. She filed an amended complaint in November 20, 2008. Defs.' RJN, Ex. 2, Dkt. 74-1. In her discursive pleadings, Plaintiff alleged that Bell and Wells Fargo violated TILA, RESPA and various other state statutes based on their allegedly fraudulent conduct relating to the mortgage agreement which she entered into on December 22, 2005. Id. at 15.[3] Among other things, Plaintiff alleged that Wells Fargo fraudulently inflated her income in the loan documents, resulting in her placement in a loan for which she should not otherwise have qualified. Id. at 11. In addition, she alleged that her placement in such a loan put her at an "unreasonable risk of foreclosure." Id. She further accused Wells Fargo and Bell of failure to provide the requisite disclosures under TILA and RESPA, and of misrepresenting the terms of the loan. Id. at 10-23. As relief, Plaintiff sought compensatory and statutory damages resulting from Bell and Wells Fargo's allegedly fraudulent course of conduct; damages for emotional distress and the loss of employment; the withdrawal of all negative credit reports; and rescission of her loan. Id. at 7, 8, 24, 26-27.

On July 8, 2010, Marin County Superior Judge, the Honorable James Ritchie, granted Well Fargo and Bell's motion for summary judgment as to all causes of action alleged against them. Id. Ex. 3, Dkt. 74-2. Judge Ritchie ruled that any claims based on Bell's alleged oral representations were barred by the two year statute of limitations applicable to oral contracts. Id. at 2. He further found that Plaintiff "was aware" of the terms applicable to her mortgage "before agreeing to and signing the loan documents," and that Wells Fargo properly paid delinquent property taxes from the escrow account and did not otherwise engage in any misconduct in its handling of the loan. Id. With regard to Plaintiff's claim that Bell and other Wells Fargo employees fraudulently misrepresented facts to Plaintiff, the court found that those "misrepresentations or conversations to

---

[3] For simplicity, the pinpoint citations to Plaintiff's state court complaint are to the ECF page numbers.

convince plaintiff to enter into a 30-year fixed mortgage never took place." Id. at 4.  Thus, the court rejected Plaintiff's claims of fraudulent misrepresentation, accounting fraud and foreclosure fraud. Id. at 4-6.  Based on the court's ruling, final judgment was entered against Plaintiff on October 21, 2010. Id.  On November 19, 2010, Plaintiff appealed the adverse judgment to the California Court of Appeal. Id. Ex. C, Dkt. 74-3.  The appeal is currently pending. See Defs.' RJN, Ex. A, Dkt. 52.

### B.  PROCEDURAL HISTORY

On February 2, 2011, Plaintiff filed a cursory pro se Complaint in this Court against Wells Fargo, Bell, DeGroote, Vericrest, CIT, First American and Deutsche Bank in which she alleged that they defrauded her in connection with the mortgage she obtained on December 28, 2005.[4]  Wells Fargo, Deutsche Bank, Bell and DeGroote filed a Rule 12(b)(6) motion to dismiss, which the Court granted on June 15, 2011.  6/15/11 Order, Dkt. 44.  Though the pleadings failed to allege any actual legal claims, the Court liberally construed the Complaint as stating claims for damages and rescission under TILA. The Court, however, found that Plaintiff had failed to allege sufficient facts to state a claim for damages or rescission under TILA. Id. at 5-6.  In addition, the Court ruled that any claim under TILA was time-barred and that her bare allegation of equitable tolling was insufficient. Id. at 6-7.  The Court granted leave to amend the damages claim, but dismissed Plaintiff's rescission claim with prejudice.

On June 27, 2011, Plaintiff filed her FAC.  Dkt. 48.  Although the Court only granted Plaintiff leave to amend her TILA claim, her FAC alleges claims for:  (1) damages and rescission under TILA; (2) common law fraud; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) violation of RICO; (5) violation of RESPA; (6) violation of the Robbins-Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.1 et seq.; (7) quiet title; and (8) negligent infliction of emotional distress.  Plaintiff seeks $1 million in compensatory damages, general damages,

---

[4] The Court granted Plaintiff's request to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915.

treble damages under RICO, punitive damages, the reversal of all negative credit reporting, rescission of the loan, and an injunction preventing foreclosure of the Property. Plaintiff's claims are based principally on Wells Fargo and Bell's allegedly fraudulent conduct in inducing Plaintiff to enter into a mortgage on December 22, 2005. She claims that discovery obtained during the course of her prior state court action supports her claims in this action.

In response to the FAC, Wells Fargo, Deutsche Bank USA (which allegedly acquired the mortgage from Wells Fargo), Bell and DeGroote (collectively "Wells Fargo Defendants") have filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) on the grounds that Plaintiff's claims are barred by the Rooker-Feldman doctrine, which holds that federal courts may not directly or indirectly review a state court judgment. In addition, the Wells Fargo Defendants assert that if the Court declines to dismiss the action under Rooker-Feldman, the Court should abstain from asserting jurisdiction under the Colorado River doctrine. Alternatively, they contend that Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Dkt. 73. Defendant First American filed a joinder in the Wells Fargo Defendants' motion. Dkt. 76.[5] Vericrest and CIT jointly filed motion to dismiss under Rule 12(b)(1) and 12(b)(6), and a motion to strike under Rule 12(f). Dkt. 70, 71. Plaintiff filed an omnibus opposition to Defendants' respective motions. Dkt. 80, 82. The motions are fully briefed and are ripe for adjudication.[6]

---

[5] Plaintiff asserts that First American's joinder is untimely and should be stricken. Dkt. 92. However, First American filed its joinder consistent with Civil Local Rule 7-2(a). Plaintiff's request to strike is denied.

[6] Preliminarily, the Court notes that the FAC, which the Court granted Plaintiff leave to file in connection with the dismissal of the original complaint, goes well beyond the scope of the Court's order granting leave to amend. The FAC impermissibly seeks to add seven new causes of action not alleged in the original complaint. To the extent that Plaintiff desired to allege new causes of action, she should have sought a stipulation from Defendants to file an amended complaint, or if no stipulation could be reached, file a motion for leave to file an amended complaint under Federal Rule of Civil Procedure 15(a). Although Plaintiff is proceeding pro se, she is subject to the same procedural rules as a represented party. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (per curiam). Nonetheless, even if these additional claims were properly before the Court, they are legally infirm for the reasons discussed below.

## II. LEGAL STANDARD

### A. RULE 12(B)(1)

A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" challenge, the court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in plaintiff's favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case of a "speaking" motion, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Department of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (internal quotation marks and citation omitted). However, a facial attack need not be converted to a speaking motion where "the additional facts considered by the court are contained in materials of which the court may take judicial notice." Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

### B. RULE 12(B)(6)

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). "[A] court

1 may consider a writing referenced in a complaint, but not explicitly incorporated therein, if the complaint relies on the document and its authenticity is unquestioned." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

### III. WELLS FARGO DEFENDANTS' MOTION TO DISMISS

#### A. ROOKER-FELDMAN

The threshold question is whether the Court has jurisdiction to consider the federal claims alleged in the FAC. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006). Federal courts have a duty to examine jurisdiction sua sponte before proceeding to the merits of a case. See S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3).

The Wells Fargo Defendants contend that the Court lacks jurisdiction over Plaintiff's claims because she is impermissibly seeking to relitigate her failed state court causes of action. The Court agrees. The Rooker-Feldman[7] doctrine prevents "a party losing in state court . . .

---

[7] The doctrine derives its name from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Thus, "[i]f claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction." Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003) (citing Feldman, 460 U.S. at 483 n. 16 & 485). Rooker–Feldman bars an action in which a party essentially asks the federal court to review the state court's decision and afford that party the same remedy she was denied in state court. Id.

Here, the claims that Plaintiff is seeking to advance in the instant action arise from, and are inextricably intertwined with, her state court action. In her prior complaint, Plaintiff alleged that Bell and Wells Fargo fraudulently failed to fully disclose the terms of the mortgage which she entered into on December 22, 2005, and engaged in "predatory" loan practices and committed violations of TILA and RESPA, among other statutes. Defs.' RJN Ex. 1, Dkt. 74-1 at 16, 21. She sought recovery of damages resulting from Wells Fargo's efforts to enforce the terms of the mortgage and to rescind the transaction. The state trial court rejected all of Plaintiff's claims, finding that there was no evidence of fraudulent conduct and that Plaintiff was fully aware of the terms of her loan before she entered into it. Likewise, Plaintiff's FAC is based on the same course of conduct alleged in her state court action and seeks much of the same relief—namely, damages resulting from Defendants' allegedly fraudulent conduct and rescission of the mortgage. As such, a judgment in the instant action would be tantamount to awarding Plaintiff the relief which she was denied in her prior suit. Rooker-Feldman prevents such a result. See Bianchi, 334 F.3d at 901 ("Rooker-Feldman bars any suit that seeks to disrupt or undo a prior state-court judgment . . . .").

Notably, Plaintiff does not dispute that the allegations and claims alleged in this action arise from and overlap with those asserted in the state court action. Instead, Plaintiff argues that "[t]here is no decision from the State Court of Appeal yet for this court to review and

besides, [she] has not asked for that." Pls.' Opp'n at 5. Taking these contentions in order, the Court first notes that it is irrelevant for purposes of Rooker-Feldman whether the California Court of Appeal has yet rendered a decision on Plaintiff's appeal. See Worldwide Curch of God v. McNair, 805 F.2d 888, 893 n.3 (9th Cir. 1986) ("For the purposes of the Rooker-Feldman doctrine, state court judgments are final even if the case remains pending on appeal in the state court system."). As to Plaintiff's second point, Rooker-Feldman applies to both direct *and* indirect challenges to a state court judgment. See Prince v. Arkansas Board of Examiners in Psychology, 380 F.3d 337, 340 (8th Cir. 2004) ("The Rooker–Feldman doctrine bars both straightforward and indirect attempts by a plaintiff to undermine state court decisions.") (citation and quotation marks omitted). Thus, while Plaintiff may not be expressly challenging Judge Ritchie's ruling, she is doing so indirectly by predicating her claims on conduct that he found was not actionable and seeking the same relief denied in the state court suit.

The Court concludes that the federal claims alleged in this action are inextricably intertwined with the decision rendered by the state court. Granting Plaintiff relief on such claims necessarily results in a finding of wrongdoing by Defendants, which would be directly contrary to the findings of Judge Ritchie. Because Plaintiff, in effect, seeks to undo the adverse state court judgment rendered against her, the Court is barred under the Rooker-Feldman doctrine from exercising jurisdiction over her federal claims.[8]

### B. ANALYSIS OF FEDERAL CLAIMS

Defendants argue, as an alternative matter, that even if Plaintiff's claims were not barred under the Rooker-Feldman doctrine, Plaintiff's claims fail, as a matter of law. As will be set forth below, the Court agrees.

#### 1. TILA

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the

---

[8] In light of this determination, the Court does not reach Defendants' alternative request to stay the action under the Colorado River abstention doctrine.

1  borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).[9]  TILA also
2  requires the lender to disclose to borrowers their right to rescind or cancel a transaction.
3  See 15 U.S.C. § 1635(a).  In the event of a TILA disclosure violation, a borrower may seek
4  damages or rescission.  15 U.S.C. §§ 1640, 1635(a).  Claims for damages must be brought
5  "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  A
6  claim for damages based on a disclosure violation accrues "at the time the loan documents
7  were signed." Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).  In
8  contrast, a borrower desiring to rescind the transaction must, within three days of
9  consummation of the transaction or the delivery of the disclosure forms required under
10 § 1635, notify the creditor of his intent to rescind. 15 U.S.C. § 1635(a).  But if the creditor
11 either fails to provide notice of the borrower's right of rescission, or fails to make a
12 material disclosure, the three-day period is extended to three years.  See Miguel v. Country
13 Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002) (citing 15 U.S.C. § 1635(f); 12 C.F.R.
14 § 226.23(a)(3)).

15       The Court previously dismissed Plaintiff's claim for damages under TILA as barred
16 by the applicable one year statute of limitations.  6/15/11 Order at 6.  Although Plaintiff had
17 argued that the statute of limitations should be equitably tolled on the grounds that she did
18 not discover Defendants' "constructive fraud" until sometime between September 2009 to
19 December 2010, the Court found that she had failed to allege any facts demonstrating that
20 she lacked a reasonable opportunity to discover the alleged TILA violations within one year
21 of signing her loan documents. Id. at 7.  Plaintiff's FAC fails to cure this deficiency.
22 Nowhere in the FAC does Plaintiff allege any facts demonstrating the reason why she was
23 unable to file a claim for damages under TILA within one year of December 22, 2005, the
24 date she signed her loan documents.  Thus, the Court concludes that Plaintiff's TILA claim
25 for damages is time-barred.

26 ───────────────
[9] TILA claims are cognizable against creditors, 15 U.S.C. § 1640(a), and assignees
27 of creditors, 15 U.S.C § 1641(a). See Anderson Bros. Ford v. Valencia, 452 U.S. 205, 208
   n.4 (1981).  Thus, the only possible party-defendants to Plaintiff's TILA claim are Wells
28 Fargo and Deutche Bank, which allegedly acquired Plaintiff's mortgage. See FAC at 8.

1     Plaintiff has also re-alleged a claim for rescission under TILA, notwithstanding the fact that the Court previously dismissed such claim with prejudice. Id. at 7.[10] TILA specifies that a borrower may rescind a transaction within three days "by notifying the creditor" of its request to rescind. 15 U.S.C. § 1635(a). Section 1635(f) sets an outside time limit on the right to rescind and provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." Id. § 1635(f). Once a creditor receives a notice of rescission, it has twenty days to "return to the obligor any money or property given as earnest money, downpayment, or otherwise, and . . . take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." Id. § 1635(b). In the event the borrower refuses to rescind, 15 U.S.C. § 1640(e) affords the borrower "one year from the refusal of cancellation to file suit [.]" Miguel v. Country Funding Corp., 309 F.3d 1161, 1165 (9th Cir. 2002).

Plaintiff alleges that because she filed a "rescission claim in the Superior Court on June 26, 2008" which she also "reiterates" here, her claim for rescission is timely. FAC at 1. This contention is meritless. In her FAC, Plaintiff alleges that she demanded that Wells Fargo rescind her loan as early as December 28, 2005. See FAC at 8. Wells Fargo therefore had until January 17, 2006, which is twenty days from the demand for rescission, to rescind the loan. 15 U.S.C. § 1635(b). When Wells Fargo failed to respond, Plaintiff had one year from January 17, 2006 to file suit. See Miguel, 309 F.3d at 1165. Since Plaintiff did not commence this action until February 2, 2011, her claim for rescission is time-barred. See Ibrahim v. MortgageIT, Inc., No. 11-0802 SBA, 2011 WL 2560233, at *5 (N.D. Cal. June 28, 2011) (dismissing TILA rescission claim on statute of limitations

---

[10] To seek reconsideration of the Court's ruling, Plaintiff should have filed a request for leave to file a motion for reconsideration under Civil Local Rule 7-9. Plaintiff neither sought nor obtained leave to re-assert a claim which the Court had previously dismissed without leave to amend. Thus, Plaintiff's claim for rescission is not properly before the Court.

grounds where plaintiffs failed to file suit within one-year after the lender's twenty-day deadline to respond to their demand for rescission had expired) (Armstrong, J.).

### 2. RESPA

Plaintiff next purports to state a RESPA claim, which was among the claims asserted in her prior state court action. See FAC at 19-20. Congress enacted RESPA to shield home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). The purpose of RESPA was to effect certain changes in the settlement process that will result, inter alia, "in more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(1), (2). RESPA creates a private right of action for only three types of wrongful acts: (1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f). Patague v. Wells Fargo Bank, N.A., No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010) (Armstrong, J.).

Plaintiff vaguely asserts that "Defendants violated RESPA by failing to correctly and accurately comply with its disclosure requirements." FAC at 19. Plaintiff avers that Wells Fargo and Deutsche Bank "conspired to illegally transfer title to her property to Deutsche Bank while the fraud claim was under way and without the required disclosure under 12 U.S.C. § 2605[.]" Id. Under 12 U.S.C. § 2605(b), "[e]ach *servicer* of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of *the servicing of the loan* to any other person." (Emphasis added). However, Plaintiff does not allege that either Wells Fargo or Deutche Bank is a loan servicer or that they sold or transferred servicing of her loan. Rather, Plaintiff alleges that Wells Fargo was her lender, and that Wells Fargo later "transferred title" to the loan to Deutsche Bank on August 25, 2008. FAC at 8. In other words, Plaintiff alleges that Wells Fargo and

Deutsche Bank are lenders, not servicers. Thus, § 2605 does not apply to Wells Fargo, Deutsche Bank or any other Defendant.

Plaintiff also accuses Wells Fargo of having illegally added $45,000 to her escrow account for "current and future taxes" in violation of 12 U.S.C. § 2609. Id. at 8, 19.[11] Section 2609, inter alia, limits the amount that a lender can request a borrower place in an escrow account. See 12 U.S.C. § 2609(a). Although a lender violating § 2609(a) is subject to penalties by the Secretary of Housing and Urban Development, see id. § 2609(d), there is no private right of action under § 2609, see Hardy v. Regions Mortg. Inc., 449 F.3d 1357, 1360 (11th Cir. 2006). Therefore, none of the allegations comprising Plaintiff's RESPA claim are actionable.

### 3. RICO

RICO provides for civil liability for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'" Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). Section 1962(c) "makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" Id. at 497. To state a civil RICO claim, a plaintiff must allege five elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant caused injury to the plaintiff's business or property. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

"To state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts." Clark v. Time Warner Cable, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations omitted). The term "racketeering activity" includes "any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." Sanford v.

---

[11] As noted, Judge Ritchie rejected Plaintiff's claims that Wells Fargo mishandled her escrow account. See Defs.' RJN Ex. 2.

MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).  "[W]hile two predicate acts are required under the Act, they are not necessarily sufficient."  Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).  Rather, "[a] 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'"  Id. (quoting in part H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)).

An "enterprise" for purposes of RICO is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Under this definition, an enterprise can be a single individual, partnership, corporation, association, or other legal entity.  Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007) (en banc).  The Supreme Court has defined an associated-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  Odom, 486 F.3d at 552 (quoting Turkette, 452 U.S. at 583).

Plaintiff alleges that "Defendants Wells Fargo and its employees, CIT, Deutsche Bank and First American did agree together and aided and abetted each other in their fraud actions, in acts which form an ongoing pattern of deceit and fraud, violating RICO, resulting in damage to the Plaintiff[.]"  FAC at 18.  However, Plaintiff fails to recite any *facts* to support the foregoing conclusory allegations or any of the requisite elements to state a RICO claim, as set forth above.  Plaintiff has not pled facts demonstrating that the enterprise had a "common purpose" and operated as an "ongoing organization," as required in this Circuit.  See Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (en banc).  Nor has Plaintiff alleged any predicate acts.  The only conduct alleged is that First American sent Plaintiff a notice of default on February 15, 2011, in contravention of a stay order allegedly entered by the California Court of Appeal.  See FAC at 18.  Even if

accepted as true, such action is not an indictable act under Title 18 of the United States Code. See Sanford, 625 F.3d at 557 (9th Cir. 2010).

Even if Plaintiff had sufficiently alleged a RICO violation, she has failed to allege a "concrete financial loss" to her business or property. See Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992) (en banc). Plaintiff claims that Defendants' actions (which are unspecified) "resulted in harming Plaintiff's reputation[.]" FAC at 18. However, injury to reputation is a personal injury, and therefore, is beyond the purview of RICO. See Diaz v. Gates, 380 F.3d 480, 485 (9th Cir. 2004) (noting that "injury to reputation" does not qualify as "injury to business or property"); see also Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083, 1086 (9th Cir. 2002) ("Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages' for personal injuries.") (quoting Oscar v. Univ. Students Co-Op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992)). In sum, the Court finds that Plaintiff's allegations fail to state a claim under RICO and that there is no basis upon which to allow such claim to proceed against any of the Defendants.

### C. REMAINING STATE LAW CLAIMS

All of Plaintiff's remaining claims are based upon California state law. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Sanford, 625 F.3d at 561 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557 (10th Cir. 2000)). Having now dismissed all federal claims alleged against Defendants, the Court declines to assert supplemental jurisdiction over her remaining claims. See City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th

Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims); see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendant claims to state court . . . .").

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motions to dismiss are GRANTED with respect to Plaintiff's federal claims under TILA, RICO and RESPA.

2. Plaintiff's motion to strike the joinder of First American is DENIED.

3. First American's request to appear by telephone for the hearing on the instant motions is DENIED as moot.

4. The Court declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims, which are dismissed without prejudice to refiling in state court.

5. The motion hearing scheduled for October 25, 2011 is VACATED.

6. The Clerk shall close the file and terminate any pending matters.

7. The Court certifies that any appeal taken from this order is not in "good faith" within the meaning of 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: October 24, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CHOUDHURI et al,

      Plaintiff,

  v.

WELLS FARGO BANK N.A. et al,

      Defendant.
_____/

Case Number: CV11-00518 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 25, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kabita Choudhuri
331 Richardson Way
Mill Valley, CA 94941

Dated: October 25, 2011

                              Richard W. Wieking, Clerk

                                     By: LISA R CLARK, Deputy Clerk